**CITIZENS ENERGY COALITION, INC., Charles W. Cole & Son, Inc., and David P. Schenkel, Intervenors-Appellants,**

v.

**INDIANA & MICHIGAN ELECTRIC COMPANY, Petitioner-Appellee,**

and

**Public Service Commission of Indiana et al., Appellees.**

**No. 2–577A163.**

Court of Appeals of Indiana, First District.

Nov. 13, 1979.

Rehearing Denied Jan. 4, 1980.

Marcia Sowles, South Bend, Frank E. Spencer, Indianapolis, Robert L. Thompson, Jr., Peebles, Thompson, Rogers & Hamilton, Richard C. VerWiebe, VerWiebe, Snow, Miller & Gray, Fort Wayne, for intervenors-appellants.

Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for petitioner-appellee.

NEAL, Judge.

In June, 1976, Indiana & Michigan Electric Company (Petitioner) filed a petition with the Public Service Commission of Indiana (Commission) seeking authority to increase its rates and charges. Following investigation and public hearings, the Commission approved the petition and granted authority for the rate increases requested. A petition for rehearing and reconsideration was filed by Charles W. Cole & Son, Inc., and David P. Schenkel (Intervenors), and by Citizens Energy Coalition, Inc. (Citizens). It was denied by the Commission. Intervenors and Citizens then filed a timely record of proceedings and assignment of errors, pursuant to Ind. Code 8–1–3–1 *et seq.*, and this appeal results.

Intervenors and Citizens raise several issues for review in their assignment of errors; however, we need only consider one issue in the disposal of this cause of action on appeal:

Whether the rates approved by the Commission, which were calculated using the statutory federal income tax rate rather than the actual or effective federal income tax rate, were contrary to law.

Petitioner, an Indiana corporation, operates as a public utility furnishing electricity to some 350,000 Indiana residents. Petitioner is also a wholly owned subsidiary of American Electric Power Co., Inc. (AEP), along with numerous other electric companies. In the proceedings before the Commission on its petition for rates increase, Petitioner computed its federal income tax expense for rate-making purposes on the basis of what its tax liability would be as an individual taxable entity at the statutory maximum 48 percent tax rate. It is uncontroverted, however, that Petitioner did not file a separate federal income tax return, instead participating in a consolidated return with AEP and its other subsidiaries pursuant to § 1501 *et seq.* of the Internal Revenue Code of 1954, and that neither Petitioner nor AEP incurred any federal income tax liability whatsoever in 1973, 1974, 1975, or in the test year, 1976. In fact, Petitioner's principal witness testified that he could not estimate when, in the foreseeable future, federal income taxes would be incurred. As a result, Intervenors and Citizens contend that no federal income tax expense should have been allowed into the rate-making process.

The Commission, in its final order, granted the rate increases requested by the Petitioner, and it rejected the request by Intervenors and Citizens to adjust the federal income tax expense to its actual expense incurred level of 0 percent. The result of this decision by the Commission is that although the Commission determined that Petitioner required additional net operating income of $20,336,238, it allowed an actual rate increase of $41,771,477 because this amount was needed (considering the federal income tax expense at the 48 percent statutory maximum) to produce the net $20,336,238 after-tax figure.

In so ordering, the Commission relied upon *Goodman v. Public Service Commission of District of Columbia*, 162 U.S.App. D.C. 74, 497 F.2d 661 (D.C.Cir.1974). In the *Goodman* case, the Public Service Commission of the District of Columbia calculated a gross rate increase for an electric utility, and applied the maximum statutory tax rate in the calculation. The appellant in the case asserted that the utility had historically paid taxes at an effective rate lower than the statutory rate, and that such lower rate should have been used to determine the new gross revenues allowed to the utility by the D.C. Commission.

The United States Court of Appeals, D.C. District, stated in *Goodman, supra,* 162 U.S. App.D.C. at 87, 497 F.2d at 674:

"We believe that the Commission acted properly in the treatment accorded federal tax allowance. The method utilized was predicated upon the assumption that 'the increase allowed a utility in a rate case is an allowance of additional net income before taxes and not gross income subject to additional expenses.' As such 'the increase or decrease in net operating income . . . is incremental to the test year data.' Appellant argues that it is incumbent upon the Commission to take into account the additional tax deductions for depreciation which will be available when [the] new plant is placed in service.

The Commission is correct in its assertion, sustained by the district court, that under a test-year method of rate making, all additions to (or reductions in) net income are considered *as if they were earned in the test year itself.* Since in arriving at the rate base for the test period all allowable deductions have been taken into effect, no deductions remain to apply to the increased net income and it must be taxed at the statutory rate." (Footnotes omitted, original emphasis.)

In the case at bar, however, the situation is not analogous to the *Goodman* case, and the *Goodman* rationale is not applicable. The fact that Petitioner was in a negative federal income tax position in the test year establishes the exact converse of the *Goodman* circumstances. In *Goodman*, all allowable deductions for the test year had been used up, and any test year incremental rate increases would have resulted in an increase in federal income tax; in the case at bar, all of the allowable deductions existing on the basis of test year operations had *not* been taken into account, and incremental income could have been added to the test year income without producing any incremental federal income tax liability.

Petitioner further contends in its argument that past losses could in no event be utilized by the Commission to adjust rates which must be set in the future. It cites Ind. Code 8–1–2–68 which provides as follows:

"Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules or joint rate or rates, to be unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this act, the commission shall determine, and by order fix just and reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this act."

It further cites *Indiana Telephone Corporation v. Public Service Commission of Indiana*, (1960) 131 Ind.App. 314, 171 N.E.2d 111, which does hold that the Commission may not fix rates which operate retroactively. It contends that to disallow the 48 percent federal income tax increment, because of past losses which are carried forward, is, in effect, retroactive rate-making. Such procedure takes into account things past, which happened under the old rate, and may not be considered in the current or future rate.

The case of *City of Evansville v. Southern Indiana Gas and Electric Company*, (1976) Ind.App., 339 N.E.2d 562, contains an extensive review of the rate-making process. No effort will be made here to dupli-

cate that review, but the reader is directed to it for the excellent discussion of the process. We will here address ourselves, however, to certain portions of it.

■ That case recites that the end purpose of the function of the Commission is to establish a rate sufficient to meet the operating expenses of the company plus a fair return which will compensate the investors. Utility's revenues, minus expenses, constitute the return on investments. All legitimate costs, plus depreciation, are allowable. The Commission can disallow, for rate purposes, excessive and imprudent expenditures. Abnormal conditions in the test year must be accounted for, and in-period adjustments made. Certain future conditions may be anticipated and computed in out-of-period adjustments, such as, as concerns us here, taxes. Federal income taxes are a component of the utility cost of service to be reimbursed by the rate payer. Under traditional concepts utility company shareholders and bondholders furnish the capital necessary for the operation of the business. The consumer pays a fair return on the utility capital and in addition, pays the costs of operation, including taxes; but it is well established that the company's investors, not the consumers, must contribute the working capital.

The Commission in the *City of Evansville* case reflects that a *fair rate of return which a regulated utility is permitted to earn must be based on capital advanced by investors.* In that case the utility had depreciated its plant on an accelerated basis and had further claimed certain investment credits which had the effect of lessening the federal income tax in early years and increasing the tax in later years. The Commission had allowed the utility to claim as current expenses not only the taxes actually paid but also an amount equal to the difference between the taxes actually paid, and all the taxes the petitioner would have paid on a straight line basis, and to amortize the tax saving over the useful life of the depreciable plant. These tax deductions were placed in a deferred tax account and were utilized as working capital. The court re-

fused to permit the Commission to add that deferred tax account to the fair value of the used and useful property for the reason that it represented consumer contribution. The utility could not obtain a return on funds contributed by a consumer, but had to rely on capital contributions.

■ The holding demonstrates the proposition that the tax increment claimed as an expense must bear a reasonable relation to tax paid, even though certain accounting procedures and benefits allowed by the Internal Revenue Code were utilized to charge taxes actually accrued in one period to a different period.

Justice Arterburn, in *Public Service Commission of Indiana et al. v. City of Indianapolis,* (1956) 235 Ind. 70, 87–88, 131 N.E.2d 308, 315, made the observation:

"A great amount of time and effort is expended by the City in attacking a former order of the Commission made in 1951 fixing the rates at that time, attempting to demonstrate that such rates were unreasonable and exorbitant. The rates fixed in the 1951 order have been adjudicated and the court at this date has no power or jurisdiction to go back and re-examine such an order. Assuming the Commission had erred in 1951 and granted excessive rates, of which there is no showing, there would not be the slightest justification for the Public Service Commission granting the Company, any rate other than that which would *produce a reasonable return upon the* [Emphasis added] *present fair value* [Original emphasis] of its used and useful property [Emphasis added]. The theory propounded by the City cuts both ways. If the contentions were true, then the rate established in 1951 which was insufficient or caused a loss to the Company, would entitle the Company at this time to have a rate established by which it could recoup such a loss or deficiency.

*Past losses of a utility cannot be recovered from consumers, nor can consumers claim a return of profits and earnings which may appear excessive."* (Emphasis added.)

■ The thrust of the above two cases is clear. Petitioner is entitled to earn a fair rate of return on the *present* fair value of its used and useful property, and not more. Old losses may not be recouped in future rates. Includible expenses in the rate-making process contemplate federal income taxes which are known, fixed and measurable.

The court in *Public Service Commission of Indiana et al., etc. v. Indiana Bell Telephone Co.*, (1955) 235 Ind. 1, 130 N.E.2d 467, allowed Bell to include as an expense for rate purposes federal income taxes actually paid, or which were obligated to be paid, regardless of Bell's relation to a holding company.

We think that *City of Muncie v. Public Service Commission of Indiana*, (1978) Ind. App., 378 N.E.2d 896 (transfer denied), decided by this court after the ruling by the Commission in the case at bar, is controlling here. There, the utility participated in a consolidated federal income tax return with its parent holding company and approximately 50 other subsidiary water utilities. Evidence was submitted to show that because of tax savings resulting from losses and excess deductions of other member companies, the utility's tax expense for rate purposes should have been computed at 17 percent instead of the statutory rate of 48 percent. This court said in *City of Muncie, supra*, at 899:

> "We feel that by automatically assuming a tax rate of 48%, without any determination of the effective tax rate, and without any determination of the properly allowable income tax expense, the Commission is allowing an additional, hidden return on capital to the shareholders at the expense of the rate-payer. Furthermore, our research indicates that at least thirteen other jurisdictions have reached the same conclusion on this issue. This case must therefore be remanded to the Commission for further findings and proceedings to determine the effective federal income tax rate and resulting tax expense of Petitioner." (Footnote omitted.)

In light of the cases recited above, we are unable to accept the argument that to disallow the arbitrary 48 percent tax figure, when no such taxes have been paid, and will not be paid in the foreseeable future, is retroactive rate-making. The Commission has determined that a fair return necessitated an increased rate of $20,336,248. According to *Public Service Commission of Indiana v. City of Indianapolis, supra*, a fair return must be based on the *present* fair value of the utility's used and useful property. Old losses may not be recouped. Yet an additional $21,435,229 was granted by the Commission in the rate increase to ameliorate the expense of federal income taxes that will never accrue or be paid. We find nothing in the Indiana statutes or the Indiana cases on the subject that justifies such a conclusion. The purpose of the inclusion of federal income taxes as a cost is the same as the inclusion of the cost of fuel, repair, labor or any other cost. It is money that must be paid out and must be considered in arriving at the end figure, that is, a fair rate of return to investors. It would be facetious to assume that the Commission, or this court, would approve the inclusion of a figure for labor, for example, in the amount of $21,435,299 if accountants testified that no such expense existed in fact and was not known, fixed and measurable within one year. In this case Petitioner's own accountant did in fact testify that no tax expense was foreseeable. Petitioner attempts to justify such inclusion of taxes as an expense on the ground that the absence of tax in the test year, and in future years, grows out of losses in past years. It is the current and future tax that is the cost, or lack of cost, not the old tax, or old loss. The mere fact that the Internal Revenue Code allows Petitioner to spread its loss for tax purposes over several years does not alter the fact that there is no tax cost in the test year, and tax is not known, fixed and measurable within one year from the end of the test year.

■ In actions of this kind, this court does not have the power to revise or in any way change a schedule of rates imposed by the Commission. This court cannot determine whether one rate is preferable to another, nor can we perform mere ministerial duties. However, this court does have the

power and the duty to determine whether a schedule of rates prescribed by the Commission is unjust, unreasonable, discriminatory or results in confiscation of property, and, if so, to restrain the enforcement of such rates. *Public Service Commission of Indiana, et al., etc. v. Indiana Bell Telephone Co., supra. See* Ind. Code 8–1–2–4.

Intervenors and Citizens, in their consolidated assignment of errors, alleged that the Commission's order was contrary to law. Pursuant to Ind. Code 8–1–3–1:

". . . An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."

The appropriate standard of judicial review of the Commission's determinations has two levels. First, the Commission's decision must contain specific findings on all the factual determinations material to its decision, ruling or order. *L. S. Ayres & Co. v. Indianapolis Power & Light Co.,* (1976) Ind.App., 351 N.E.2d 814; *City of Evansville, supra.* Second, this court must inquire whether there is substantial evidence in light of the whole record to support the Commission's findings of basic facts. *L. S. Ayres & Co., supra; City of Evansville, supra.* If the Commission's decision, ruling or order, based on substantial evidence and in view of specific findings of facts, is within the jurisdiction of the Commission, this court must uphold it. *Twin City Realty Corp. et al. v. Clay Utilities, Inc. et al.,* (1970) 146 Ind.App. 629, 257 N.E.2d 686.

The "substantial evidence" standard of judicial review, used by this court in the review of administrative actions, is a difficult principle to define. Judge Staton of this court perhaps defined the substantial evidence standard best, when he stated in *L. S. Ayres, supra,* at 823:

". . . [W]e conclude that the substantial evidence standard authorizes a

reviewing court to set aside Commission findings of fact when a review of the whole record clearly indicates that the agency's decision lacks a reasonably sound basis of evidentiary support. *See Universal Camera Corp. v. NLRB* (1951), 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456."

The evidence in the case before us is uncontroverted: Petitioner did not file a separate federal income tax return and did not compute its taxes at a rate of 48 percent. Rather, Petitioner calculated its federal income taxes, and such calculation was presented to AEP. AEP gathered the tax returns of all of its subsidiaries, combined them, and filed a single consolidated federal income tax return. Further, Petitioner incurred no federal income tax on its individual return, as reported to AEP, in 1973, 1974, 1975, or in the test year, 1976. AEP incurred no federal tax liability from 1971 through 1976, and unrebutted testimony indicated that AEP would have no federal income tax liability in the foreseeable future. Therefore, Petitioner would have no effective tax liability either, so long as AEP was in a negative federal tax situation.

It is our opinion that the Commission cannot arbitrarily allow a tax expense computed on the basis of a separate federal income tax return when such return was not actually filed. This does not mean that revenues or expenses of AEP subsidiaries must be attributed to Petitioner for rate-making purposes. It does mean, however, that some "reasonable," "just" determination must be made as to the tax savings accruing to Petitioner as a result of its participation in the filing of a consolidated federal income tax return. Thereby, a more accurate computation of Petitioner's actual federal income tax liability can be made. In fact, even if Petitioner filed its own federal income tax return, the Commission should make a reasonable determination of taxes paid to better reflect actual expenses of the utility in the rate-making process.

To determine rates is beyond the jurisdiction of this court, and beyond our accounting abilities. It is certainly within our power, however, to recognize that the allowance into the rate-making process of expenses not incurred by Petitioner is patently "unreasonable," "unjust" and within the parameters of Ind. Code 8–1–2–4.[1]

Consequently, we reverse the granting of the rate increase by the Commission. We remand the case to the Commission with orders to proceed in the rate-making process in accordance with this opinion.

Reversed and remanded.

LOWDERMILK, P. J., and ROBERTSON, J., concur.

1. "Every public utility is required to furnish reasonably adequate service and facilities. The charge made by any public utility for any service rendered or to be rendered either directly or in connection therewith shall be reasonable and just, and every unjust or unreasonable charge for such service is prohibited and declared unlawful. The commission, in order to expedite the determination of rate questions, or to avoid unnecessary and unreasonable expense, or to avoid discrimination in rates between classes of customers, or, whenever in the judgment of the commission public interest so requires, may, for rate making and accounting purposes, or either of them, consider a single municipality and/or two (2) or more municipalities and/or the adjacent and/or intervening rural territory as a regional unit where the same utility serves such region, and may within such region prescribe uniform rates for consumers or patrons of the same class. Nothing in this act contained shall authorize any public utility during the remainder of the term of any grant or franchise under which it may be acting at the time this act takes effect to charge for any service, in such grant or franchise contracted, exceeding the maximum rate or rates therefor, if any, that may be fixed in such grant or franchise."