**CHARLES W. COLE & SON, INC., and David P. Schenkel, Appellants-Intervenors,**

v.

**INDIANA & MICHIGAN ELECTRIC COMPANY, Appellee-Petitioner.**

No. 2–281A53.

Court of Appeals of Indiana, First District.

Oct. 27, 1981.

Robert L. Thompson, Robert L. Thompson, P. C., Fort Wayne, for appellants-intervenors.

Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellee-petitioner Indiana & Michigan Electric Co.

David S. Richey, Parr, Richey, Obremskey & Morton, Lebanon, for appellee-petitioner City of Fort Wayne, Indiana.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Intervenors-appellants Charles W. Cole & Son, Inc., and David P. Schenkel seek judicial review of an order of the Public Service Commission of Indiana establishing the amount of a refund to be paid by petitioner-appellee Indiana & Michigan Electric Company to its retail ratepayers. We reverse.

## FACTS

This action for judicial review has its origin in a petition for a rate increase filed by Indiana & Michigan Electric Company ("I&M") with the Public Service Commission of Indiana ("PSC"). The PSC granted I&M the authority to increase its rates, and that order was brought to this court for review. In *Citizens Energy Coalition, Inc. v. Indiana & Michigan Electric Company*, (1979) Ind.App., 396 N.E.2d 441, *trans. denied*, the court reversed the granting of the rate increase and remanded the case to the

PSC for a reasonable and just determination of the tax savings which accrue to I&M as a result of its participation with other subsidiaries of American Electric Power Co., Inc., ("AEP") in the filing of a consolidated federal income tax return. The decision in that review was based upon the uncontroverted evidence that for a number of years, including the test year,[1] 1976, neither I&M nor AEP had incurred any federal income taxes and would not incur any in the foreseeable future. The PSC, on the other hand, had allowed I&M a rate increase of $21,435,229 per year—in addition to an increase for net operating income—to allow for federal income tax expense calculated at the 48% statutory maximum corporate income tax rate in effect at the time.

On remand, the PSC considered the matters of I&M's effective income tax rate during the test year and the amount of any refund which I&M should pay to its retail ratepayers for the period during which the new rates were in effect. After holding a hearing and admitting additional evidence, the PSC issued its order on January 21, 1981. Included in the order were the PSC's findings, which state, in pertinent part, as follows:

"The Commission, having duly considered and examined all the evidence in this cause and having duly considered the opinion of the Court of Appeals of Indiana rendered in connection with its decision of November 13, 1979, now finds:

" . . .

."3. *Amount of the Refund.* The amount of any such refund is, however, a matter within the discretion of the Commission; but must be based upon substantial evidence. *City of Richmond v. Public Service Commission, supra.* The only substantial evidence presented by any party and admitted in this proceeding, as to the amount of any refund due I&M's customers in this cause, is found in the testimony of the City's Witness, Bernard T. Perry, who testified that in his opinion an appropriate refund of $8.1 million to I&M's retail electric customers— which this Commission interprets to mean the amount of refund due such customers as a result of the excessive rates paid by them during the period that the rates authorized under this Commission's previous Order were in effect, due to the fact that I&M's Federal Income Tax expense was calculated under such rates on a single-company rather than a consolidated basis—would be fair and in compliance with the mandate of the Court of Appeals issued in its November 13, 1979[,] opinion; and the Commission now so finds. The Commission further finds that a refund in such amount is fair and reasonable under the evidence presented in this cause.

" . . .

"5. *Effective Tax Rate.* Based upon the testimony of witnesses Perry and D'Onofrio at the remand hearing, together with a perusal of the exhibits admitted into evidence at the initial hearing and the Commission's Order therein, it is possible to compute an effective tax rate for Petitioner's test year. Taking into consideration the level of net utility operating income allowed by our order (p. 18, para. 4) adjusted for the allowed deficiency in operating income of $20,336,342 (p. 25, para. 3), and the jurisdictional tax expense shown in exhibits F–5–B and H–7, the Petitioner's adjusted effective tax rate is 45.9%. Adjusting that level of utility operating income for the heretofore determined refund of $8.1 million associated with the twenty (20) month period during which the rates in question were effective, Petitioner's effective tax rate is determined to be 45.6%.

"6. *Total Payable Refund.* Based upon our review of the entire record herein, and the evidence and testimony at the remand hearing and the judicial mandate in *Citizens Energy Coalition v. Indi-*

---

1. A "test year" is generally the most recent annual period for which complete financial information is available. The company's operating results for that period are used as a testing vehicle for new rates. *L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* (1976) 169 Ind.App. 652, 351 N.E.2d 814, *trans. denied.*

ana & Michigan Electric Company, supra, we find that the total amount to be refunded to I&M's retail electric ratepayers, *during the period from January 30, 1977, to September 30, 1978,* is $9,315,000 which amount is composed of $8,100,000 refund and $1,215,000, which latter amount represents the interest on said money during the period set forth above as found in the evidence of record herein."

The PSC proceeded to order I&M to refund to its retail electric ratepayers $8,100,000 in excessive charges plus $1,215,000 in interest. Charles W. Cole & Son, Inc., and David P. Schenkel ("intervenors") now seek judicial review of the PSC's order.

### ISSUE

Although the intervenors present three issues for our review, we deem the first of those issues to be dispositive of this case, *i.e.,* whether the PSC's order is contrary to law because the PSC failed to enter findings setting forth I&M's federal income tax expense and the factors, procedures, and policies which were considered and adopted in determining such expense, I&M's effective federal income tax rate, and the amount of the refund.

### DISCUSSION AND DECISION

■ The sufficiency of the PSC's findings of fact is a matter appropriate for review by this court. Ind.Code 8–1–3–1. Our review of the PSC's factual determinations is governed by a two-tiered standard. At the first level, we examine the PSC's decision in order to ascertain whether it contains specific findings of basic facts on all factual determinations material to the PSC's ultimate conclusions. At the second level, we determine whether, in light of the whole record, there is substantial evidence to support the PSC's findings of basic facts. *L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* (1976) 169 Ind.App. 652, 351 N.E.2d 814, *trans. denied* (1977); *Citizens Energy Coalition v. Indiana & Michigan Electric, supra.*

Our review in this case involves the first level. The purposes behind the requirement of specific findings of basic facts were aptly stated in *L.S. Ayres & Co. v. Indianapolis Power & Light Co., supra* :

"The policies underlying the 'basic findings' requirement apply with special force to Commission rate orders. The legislative scheme which delegates to the Commission its rate-making authority merely requires that the rates and charges established be 'reasonable and just.' IC 1971, 8–1–2–4 (Burns Code Ed.). Since the Commission operates without the benefit of legislative guidance, it must attempt to formulate general standards of rate-making policy on an *ad hoc* case-by-case basis. Moreover, the rate-making function involves innumerable technical determinations which are peculiarly within the Commission's competence and expertise. When the Commission provides the reviewing court with basic findings of fact on all issues material to its decision, its expert reasoning process and subtle policy judgments provide an intelligible framework for the judicial non-expert. Since 'basic findings' afford a rational and informed basis for review, the danger of judicial substitution of judgment on complex evidentiary issues and policy determinations is substantially reduced. *See Hancock Rural Tel. Corp. v. Public Serv. Comm'n* (1964), 137 Ind.App. 14, 201 N.E.2d 573. The process of formulating basic findings on all material issues can also serve to aid the Commission in avoiding arbitrary or ill-considered action. 'Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper.' 2 K. Davis, Administrative Law Treatise § 16.–05, at 477 (1958), quoting Judge Frank in *United States v. Forness* (2d Cir. 1942), 125 F.2d 928, 942. There is little assurance that an administrative agency has made a reasoned analysis if it need state only ultimate findings or conclusions."

169 Ind.App. at 662, 351 N.E.2d 814.

A distinction needs to be drawn between basic findings (or specific findings of basic

facts) and ultimate findings (or ultimate conclusions), both of which are essential to judicial review of PSC orders. Basic findings are less detailed than a summary of the evidence, and they are not merely a recitation of testimony given or other evidence introduced. Basic findings are statements of those facts which the PSC determines, after considering the evidence introduced, to be true and relevant to factual determinations which must be made in order to properly decide the case. Ultimate findings are determinations or conclusions which flow rationally from the basic findings and are usually expressed in the language of a statutory standard. Ultimate findings are less detailed than basic findings. Moreover, unlike basic findings, ultimate findings are conclusions of law or mixed conclusions of law or policy and fact. *Perez v. United States Steel Corp.*, (Ind.) 426 N.E.2d 29 (1981); *Capital Improvement Board of Managers v. Public Service Commission*, (1978) Ind.App., 375 N.E.2d 616; 3 K. Davis, Administrative Law Treatise § 14.27, at 124 (2d ed. 1980).

■ The question of what degree of specificity is required of basic findings is not easily answered, but this court's comments in *Capital Improvement Board, supra*, give a general idea of what we are looking for:

"As to the requirement of specificity of findings, no precise guidelines can be drawn. The rule that has been followed in this State is succinctly stated in *Fred J. Stewart Trucking, Inc. v. Bunn Trucking Company* (1972), 151 Ind.App. 157, 278 N.E.2d 310: 'The findings must be specific enough to enable the court to review intelligently the Commission's decisions.'

"When the facts and findings of the agency are stated with sufficient particularity and specificity that this court feels it can adequately and competently review and comprehend the decision of the agency, the requirement of reciting specific facts is satisfied."

375 N.E.2d at 631. The specificity required to enable this court intelligently to review the PSC's orders will necessarily vary from case to case, depending upon the quantity and complexity of the evidence introduced.

■ Furthermore, in order that we intelligently may review the PSC's orders, we need more than a statement of the PSC's findings of basic fact and its conclusions thereon. We also need a statement of the *reasons* for the decision, *i. e.*, a statement of the law which the PSC deems applicable, the policy considerations which the PSC brings to bear on the matter before it, and an explanation of the processes followed in arriving at its conclusions. These reasons must be set out because "[t]he subject matter of the regulatory process is too complex to permit the judicial non-expert any clear insight concerning the legal and factual issues which the Commission thought 'material' to its decision." *City of Evansville v. Southern Indiana Gas & Electric Co.*, (1975) 167 Ind.App. 472, 493, 339 N.E.2d 562. As this court said in *V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc.*, (1976) 171 Ind. App. 109, 115–16, 355 N.E.2d 441:

"In certain instances to say that findings of basic fact are required is to say not enough. In some instances, as here, the ultimate fact may depend upon myriad factors which do not and cannot fit within an established or fixed set of essential elements. A mere recitation of the factors considered and found as fact may do no more to facilitate judicial review than a finding of the ultimate fact. It is thus appropriate to say that we need not only findings of basic facts but we must know *how and why and to what purpose the administrative agency utilized those facts* in reaching its ultimate conclusion. A rational relationship between the facts found and the conclusion reached must exist and should be stated. We need then, in addition to the findings of fact, a statement of the *reasons for the agency's ultimate determination. See Easley v. Metropolitan Board of Zoning Appeals* (2d Dist. 1974) Ind.App., 317 N.E.2d 185 at 192–193. That statement of reasons should embrace a reference to the basic facts found, relating those basic facts to the ultimate fact within a framework of

the law which defines the issues to be decided, i. e., those issues which are disputed by parties." (Our emphasis.)

In *Office of Public Counsellor v. Indiana & Michigan Electric Co.*, (1981) Ind.App., 416 N.E.2d 161, this court was confronted with a 1978 order granting a rate increase in which the PSC had taken into account the effect of tax losses incurred by I&M's parent corporation, AEP. However, the court's review of the issue of the federal income tax expense was hampered by the PSC's failure to state how much of the incremental revenue approved for I&M was for tax expense, how the tax expense was calculated, or how the stated effective tax rate was determined. In remanding the cause for further proceedings, the court specified the information which the PSC would have to include in its findings in order to make them complete:

> "At minimum, *City of Muncie* [*v. Public Service Commission*, (1978) Ind.App., 378 N.E.2d 896] requires the Commission to explain by appropriate findings why such allowances [2] are representative of I & M's 'actual tax liability' and do not instead constitute a hypothetical expense. In addition, the Commission should set forth the amount of allowed incremental revenues for tax expense and how it arrived at the appropriate effective tax rate." (Our insertion and footnote.)

416 N.E.2d at 170.

Applying these principles to the PSC's findings in the case at bar, we conclude that the findings are inadequate to permit us intelligently to review the PSC's order. In *Citizens Energy Coalition, supra*, this court remanded the case for a reasonable and just determination of tax savings accruing to I&M as a result of its participation in the filing of a consolidated federal income tax return. Finding No. 3 states that a refund of $8,100,000 to I&M's retail electric customers is fair and reasonable, but the PSC's treatment of its derivation of that figure is superficial. We are told only

that the PSC interprets witness Perry's opinion, that $8,100,000 is an appropriate refund, to refer to the amount of refund due as a result of excessive rates paid during the period in question because I&M's federal income tax expense was calculated on a single-company basis rather than on a consolidated basis. Apparently the $8,100,000 figure represents the amount found by the PSC to be the extent of I&M's tax savings resulting from its participation in a consolidated federal income tax return. However, we are given not so much as a hint as to how witness Perry or the PSC arrived at that figure.

Finding No. 5, in which the PSC determined the effective tax rate to be 45.6%, is only slightly more specific. We are told that the level of net operating income allowed by the original order is adjusted for the allowed deficiency in operating income and the refund in determining the effective tax rate. However, the nature or method of these adjustments is not stated.

This court needs to know the general *reasoning* used by the PSC in arriving at the figures it found for the refund amount and the effective income tax rate. *V.I.P. Limousine v. Herider-Sinders, supra*. We must know what *policies* the PSC applied in determining which of the tax credits, loss carry forwards, or other tax-reducing items used by AEP properly accrue to I&M and, in at least a general way, the *processes* or computations used in arriving at the tax savings of AEP which accrue to I&M and the effective income tax rate of I&M. *Office of Public Counsellor v. Indiana & Michigan Electric, supra; City of Evansville v. Southern Indiana Gas & Electric, supra*. Finally, the amount of incremental revenue allowed for federal income tax expense after making the determinations required by *Citizens Energy Coalition, supra*, should be stated. *Office of Public Counsellor v. Indiana & Michigan Electric, supra*.

We realize that rate-making can be a highly complex procedure requiring evi-

---

**2.** The court was referring to credits and loss carry forwards available to I&M for federal income tax purposes.

dence, computations, and the application of accounting and mathematical principles which this court does not have the expertise to interpret. We understand as well the difficulty which an expert body such as the PSC would encounter in condensing these facts, computations, and principles into findings which are both manageable for judicial non-experts and yet detailed enough to allow the court to determine whether the findings support the conclusions and the evidence supports the findings, *L.S. Ayres v. Indianapolis Power & Light Co., supra* ; IC 8–1–3–1; whether the rates set are reasonable and just, Ind.Code 8–1–2–4; whether the order was the product of a consideration of only the proper factors; and whether the PSC remained within its jurisdiction and conformed to the applicable law, *Capital Improvement Board v. Public Service Commission, supra.* Nonetheless, the degree of specificity which we have outlined in this opinion is necessary— and will be required—so that we properly may exercise our duty of reviewing the PSC's orders.

Accordingly, we reverse the PSC's order and remand the case for further proceedings in accordance with this opinion.

Reversed and remanded.

BUCHANAN, C. J. (by designation), and ROBERTSON, J., concur.