**RAM BROADCASTING OF INDIANA, INC., Respondent-Appellant,**

v.

**DIGITAL PAGING SYSTEMS OF INDIANA, INC., Petitioner-Appellee,**

**and**

**Indiana Bell Telephone Company, Incorporated, United Telephone Company of Indiana, Incorporated, General Telephone Company of Indiana, Incorporated, Home Telephone Company, Inc., Monrovia Telephone Corporation, Home Telephone Company of Pittsboro, Inc., Communications Corporation of Indiana, Inc., T.A.S.I., Inc., Radiotelephone Company of Indiana, Inc., Hancock Rural Telephone Corp., Hendricks Telephone Corp., Monrovia Telephone Corporation, Clay County Rural Telephone Corporation, Smithville Telephone Company, Incorporated, Thorntown Telephone Company, Respondents-Appellees.**

No. 2-782A207.

Court of Appeals of Indiana, First District.

April 26, 1984.

Ordered Published May 30, 1984.

Jerry Williams, Nancy E. Wever, Williams & Shoup, Indianapolis, for respondent-appellant.

James L. Petersen, James A. Shanahan, Robert B. Clemens, Ice, Miller, Donadio & Ryan, Indianapolis, for petitioner-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

RAM Broadcasting of Indiana, Inc. (RAM), appeals from the decision of the Public Service Commission of Indiana (Commission) granting Digital Paging Systems of Indiana, Inc. (Digital), a Certificate of Territorial Authority to operate a radio paging system in a seven county area surrounding Marion County, Indiana.[1]

We affirm.

## FACTS

Throughout 1980, various petitions were filed with the Commission by Radiotelephone Company of Indiana, Inc. (RTI), T.A.S.I., Inc. (T.A.S.I.), RAM, and Digital wherein each sought Certificates of Territorial Authority to operate radio paging and/or mobile telephone services to the public in the seven county area surrounding Indianapolis. At the time, RTI, T.A.S.I., and RAM already possessed certificates which enabled them to conduct their operations in Marion County.[2]

Following a prehearing conference and a consolidation of the numerous petitions, the Commission conducted the required hearings, and on October 1, 1981, rendered its decision. Therein, it made the following determinations:

1. RTI was certified to operate both radio paging and mobile telephone systems in all seven counties.

2. RAM was certified to operate a radio paging service in all seven counties and a mobile telephone service in Hamilton, Hancock, and Hendricks counties.

3. T.A.S.I. was certified to operate a radio paging service in all seven counties as well as a mobile telephone service.

4. Digital was certified to operate a radio paging service in all seven counties.

RAM alone now complains the Commission erred in granting a certificate to Digital.

While there are numerous other facts relevant to the resolution of the instant case, they can be more meaningfully stated in our discussion of the issues.

## ISSUES

We have rephrased and restated the issues raised by RAM as follows:

1. Are the findings of basic fact sufficient to support the Commission's ultimate findings regarding:

   a. the public convenience and necessity for the granting of certificates to four RCCs[3] to service the seven county area;

   b. Digital's financial, technical, and managerial ability to provide radio paging services in the seven county area; and

   c. Digital's proposed rates for their services as being fair, reasonable, just, and nondiscriminatory?

2. Is there substantial evidence to support the Commission's findings of basic fact concerning:

   a. the number of potential customers in the seven county area; and

   b. the finite number of customers each RCC could serve?

---

1. The seven counties are Boone, Hamilton, Hancock, Hendricks, Johnson, Morgan, and Shelby.

2. Digital was granted a similar certificate in a separate action before the Commission during the course of these proceedings.

3. RCC is the acronym frequently used to refer to radio common carriers such as RAM, RTI, T.A.S.I., and Digital.

3. Did the Commission err in failing to make findings regarding:

    a. the differences in the public need and potential market for radio paging services in the seven counties;

    b. the distinctions between the systems each RCC offered; and

    c. its determination that a failure to grant Digital a certificate would result in an unfair competitive advantage to the other RCCs?

4. Did the Commission err in refusing to take administrative notice of RAM's motion for an involuntary dismissal of Digital's petition for a certificate in an unrelated proceeding?

5. Was the Commission's finding regarding Digital's proposed rates irrelevant?

6. Did the Commission err in failing to articulate the meaning it ascribed to "public convenience and necessity"?

7. Did the Commission err in utilizing a subjective test of the market potential for radio paging services in the seven counties?

8. Was the Commission's adoption and application of the theory of regulated competition instead of regulated monopoly contrary to law?

9. Was the distinction drawn by the Commission between RCCs and landline telephone companies unsupported by Indiana law?

## DISCUSSION AND DECISION

### Issue One

RAM first challenges the sufficiency of the Commission's findings of basic fact relative to three of its ultimate findings. The three ultimate conclusions are: that public convenience and necessity required the granting of certificates to each of the four RCCs; that Digital possessed the financial, technical, and managerial ability to provide radio paging services in the seven county area; and that Digital's proposed rates were fair, reasonable, just, and nondiscriminatory. Because there were insufficient findings of basic fact supportive of these conclusions, RAM argues the Commission's order must be reversed and Digital's certificate revoked.

While this court is reluctant to disturb administrative findings, *Office of the Public Counselor v. Indianapolis Power and Light Co.,* (1980) Ind.App., 413 N.E.2d 672, 675, we have held that PSC decisions must contain "specific findings on all factual determinations material to its ultimate conclusions." *City of Evansville v. Southern Indiana Gas and Electric Co.,* (1975) 167 Ind.App. 472, 483, 339 N.E.2d 562, 571. *See also Citizens Action Coalition of Indiana, Inc. v. Public Service Company of Indiana,* (1983) Ind.App., 450 N.E.2d 98, 101–02; *Citizens Energy Coalition, Inc. v. Indiana & Michigan Electric Co.,* (1979) Ind.App., 396 N.E.2d 441, 447, *trans. denied* (1980); *L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* (1976) 169 Ind.App. 652, 661, 351 N.E.2d 814, 822, *trans. denied* (1977). In other words, there must be sufficient findings of basic fact to support the ultimate conclusions of the Commission. *Indiana Bell Telephone Co., Inc. v. T.A.S.I., Inc.,* (1982) Ind.App., 433 N.E.2d 1195, 1200, *trans. denied.*

We next examine the record to ascertain whether there is substantial evidence to support the basic findings of fact, and in turn, whether the ultimate conclusions can be reasonably inferred from those findings. *Citizens Energy Coalition,* 396 N.E.2d at 447; *City of Evansville,* 167 Ind.App. at 484, 339 N.E.2d at 571. Provided an affirmative determination is made, the decision will be affirmed.

RAM first challenges the following ultimate conclusion of the Commission:

    "The Commission now finds that the evidence presented herein establishes that a public need for mobile radio telephone and paging service exists in Boone, Hamilton, Hancock, Hendricks, Johnson, Morgan, and Shelby Counties, Indiana, and the public convenience and necessity requires the issuance of Certifi-

cates of Territorial Authority to provide such service in said counties."

Record at 930. In RAM's view, this conclusion is unsupported by any findings of basic fact. RAM, however, has ignored the following findings also made by the Commission:

"In determining what public convenience and necessity require, the Commission must consider all evidence and factors pertaining to the public's need for the service. Accordingly, we turn to the evidence presented herein.

8. That each of the applicants submitted the results of surveys conducted by them in regard to the need for the proposed service in Boone, Hancock, Hendricks, Johnson, Morgan, and Shelby Counties, Indiana. Said surveys established a positive response in each of said counties as to a need for the proposed services. The applicants also presented their projections for each of said counties.

9. The evidence also established that the applicants herein propose different types of systems to provide mobile radio telephone and paging service to the public, said systems varying in the type of equipment used and the frequency upon which service would be rendered.

In addition, evidence was presented for each county pertaining to the following population data, business establishments data, and commuting patterns data."

Record at 929–30.

█ In view of these findings, we cannot say the Commission erred in reaching the ultimate conclusion that public convenience and necessity required the granting of certificates to four RCCs. As we noted in *V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc.*, (1976) 171 Ind.App. 109, 355 N.E.2d 441, the concept of public necessity is not "susceptible to rigid or precise definition." *Id.* at 116, 355 N.E.2d at 445. Rather, we held, "[b]ecause the public's needs and demands are gauged by many varia-

bles, specific evidentiary factors necessary to establish 'public convenience and necessity' may not, therefore, be categorized or fixed." *Id.* at 115, 355 N.E.2d at 445. Moreover, "[t]he degree of specificity" required of findings to facilitate intelligent review by this court, "will necessarily vary from case to case depending upon the quantity and complexity of the evidence introduced." *Indiana Bell*, 433 N.E.2d at 1200. *See also Charles W. Cole & Son, Inc. v. Indiana & Michigan Electric Co.*, (1981) Ind.App., 426 N.E.2d 1349, 1353.

In the instant case, the quantity and complexity of the evidence introduced regarding the issue of public convenience and necessity was, to say the least, significant.[4] Nevertheless, we do not believe detailed findings as to each and every fact bearing upon the issue must be made in order to support an ultimate conclusion that public convenience and necessity warranted the granting of a certificate. Thus, while the Commission's findings are not exhaustive of all the evidence before it, they are not so inadequate or deficient as to prohibit intelligent review by this court.

This case is therefore distinguishable from *V.I.P. Limousine* where we found the Commission's finding of public convenience and necessity *wholly* unsupported by findings of basic fact. *Id.* at 118, 355 N.E.2d at 447. In the instant case, the Commission stated its ultimate conclusion only after finding the surveys of the seven counties revealed a need for radio paging services. True, there was also evidence introduced concerning the growth in population and the number of businesses in the seven county area from which the Commission *could have* made findings supportive of its ultimate conclusion. However, we are not prepared to define a rigid standard by which PSC findings are to be measured. Therefore, while we agree additional findings could have been made, we find those which were made are sufficient to support the ultimate conclusion that public conve-

**4.** The record herein consists of nearly 5,000 pages including a plethora of exhibits, many of

which pertain at least in part to this issue.

nience and necessity required the granting of the four certificates.

RAM also challenges the Commission's ultimate conclusion regarding Digital's financial, technical, and managerial ability to provide radio paging services as well as its finding that Digital's proposed rates were reasonable. According to RAM, there are insufficient findings of basic fact to support either of these conclusions.

In *Transport Motor Express, Inc. v. Smith*, (1972) Ind.App., 289 N.E.2d 737, *vacated on other grounds*, we held that "[a]s to the other elements of the claimant's burden of proof, the uncontested and undisputed elements, on which the Board must make a finding, it is relatively unimportant whether the facts are found specifically or whether the Board merely 'mouthes the general language of the statute'." *Id.* at 744 (footnotes omitted).

■ In the present case, neither of these issues were ever in dispute. Furthermore, RAM directs us to no evidence tending to indicate Digital's financial condition or technical ability were deficient or its proposed rates were anything but reasonable. In fact, all of the evidence which we have reviewed is supportive of the Commission's ultimate conclusions. Hence, we do not believe it necessary to remand this cause for further findings as to these issues.

*Issue Two*

■ RAM next argues there was not substantial evidence in the record to support the Commission's findings of basic fact concerning the number of potential customers in the seven county area and the determination that each RCC could serve only a finite number of customers.[5] Thus,

RAM asserts, the Commission's decision must be reversed and Digital's certificate revoked.

RAM is correct insofar as basic findings of fact must be supported by substantial evidence. *City of Evansville*, 167 Ind.App. at 484, 339 N.E.2d at 572. Our review of the record, however, reveals there was substantial supporting evidence.

■ In making our determination, we must consider all the evidence in the record, *id.* at 484, 339 N.E.2d at 573, and affirm the decision if there is sufficient evidence from which the findings in question may be reasonably inferred. *Id.* at 485, 339 N.E.2d at 572. *See also United Telephone Co. of Indiana, Inc. v. Public Service Commission of Indiana*, (1980) Ind.App., 402 N.E.2d 1013, 1015.

With respect to the number of potential customers in the seven county area, the Commission found, *inter alia:*

"The evidence and all relevant factors herein establishes that the potential markets for paging service within Boone, Hamilton, Hancock, Hendricks, Johnson, Morgan and Shelby Counties, Indiana, is of such size that if properly marketed will support four RCCs rendering paging service to the public within the geographical areas of said counties, and would not result in wasteful duplication of facilities or injury to the public."

Record at 931.

■ Examination of the record reveals that the four RCCs introduced the results of surveys in the seven counties which identified some 767 potential customers. The uncontradicted testimony of Seymour Cohen, moreover, indicated the market for

5. In a related argument, RAM contends the Commission's finding that failure to grant certificates of all four applicants would result in an unfair competitive advantage to those receiving a certificate was irrelevant. Essentially, RAM submits this determination was irrelevant to the ultimate conclusion regarding public convenience and necessity. RAM misconstrues the Commission's findings, however, inasmuch as this finding pertained to the determination of which of the four RCCs would receive a certificate and not to the issue of public convenience

and necessity. While not a controlling factor, we believe the Commission's finding regarding competitive advantage was relevant. *Cf. Decatur County Rural Electric Membership Corp. v. Public Service Co. of Indiana, Inc.*, (1970) 146 Ind.App. 699, 710, 258 N.E.2d 180, 187, *trans. denied* (evidence of customer preference for one utility over another while not a controlling factor in determining public convenience and necessity is relevant). *See also Indiana Bell Telephone Co., Inc. v. T.A.S.I., Inc.*, (1982) Ind.App., 433 N.E.2d 1195, 1202, *trans. denied.*

paging services in the Indianapolis area could be expected to increase by 30% in the next ten years. Record at 2870. In view of this evidence, we are not prepared to find there is insubstantial evidence to support the Commission's finding that the market potential justified the granting of four certificates.

We reach a similar result regarding RAM's challenge to the following finding made by the Commission concerning the limited capabilities of RCCs:

"The number of customers an RCC can accomodate is ultimately limited by the number of channels allocated to it by the FCC and thereby the RCC may efficiently serve only a *finite* public.

In contrast, a landline company may provide service to an *infinite* public, in that it may accomodate additional customers simply by the installation of more instruments, lines and central office equipment.

Thus, the *prevention* of *uneconomic duplication* of *facilities*, is not the determinate factor when authorizing two or more RCCs to provide *limited* 'telephone service' to a *finite* public in a given area, as it would be in the case of landline telephone companies that must provide *unlimited* service to an *infinite* public."

Record at 926 (emphasis in original).

RAM argues, in essence, that the above stated finding of the Commission fails to support its conclusion that the RCCs then operating in Marion county [6] either could not or would not be able to serve the public in the surrounding seven counties, and moreover, that it is irrelevant to its observation concerning the uneconomic duplication of facilities. Finally, RAM contends that even if the Commission was correct in its observation concerning the finite capabilities of RCCs, there was no evidence to support it.

Once again, RAM has misconstrued the Commission's order. By "finding" RCCs may serve only a finite public, the Commission was merely making an observation,

which, with its expertise in this area, was obvious. It was not, as RAM argues, making a finding upon which to premise its ultimate conclusion concerning public convenience and necessity. Instead, the Commission was merely acknowledging an obvious distinction between RCCs and landline telephone companies which rendered the consideration of uneconomic duplication of facilities a lesser concern in the granting of certificates to RCCs as opposed to landline companies. And while a trial court may well have needed evidence to make such a distinction, we do not believe the Commission, as the regulatory body of this industry, was without sufficient expertise to so find even absent supporting evidence. Accordingly, we find no error in these findings.

*Issue Three*

RAM next contends the Commission erred in failing to make a finding of basic fact concerning the degree of public need and market potential for radio paging services in each of the seven counties. Further, in RAM's view, the Commission's finding regarding the distinctions between the systems each RCC proposed to offer was irrelevant and should be stricken.

In support of its argument that findings should have been made as to the differences in public need and market potential in the respective counties, RAM submits that the differences were material to the Commission's ultimate conclusion, and therefore, should have been the subject of a special finding of basic fact. RAM, however, cites no authority for this contention, thus waiving any possible error. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *Dean v. Dean,* (1982) Ind.App., 439 N.E.2d 1378, 1385. Furthermore, we fail to see the need for the finding RAM desires. The Commission found there was sufficient need and market potential in each of the seven counties, we fail to see the benefit in it then stating how the need and market potential differed or how such a finding would make for more intelligent

6.   RAM, RTI, and T.A.S.I.

review by this court. We therefore find no error in the Commission's failure to make such a finding.

■ Like the preceding argument, RAM cites no authority for its assertion that the Commission's finding of distinctions between the services offered by the four RCCs was irrelevant. Thus, any possible error is waived. Appellate Rule 8.3(A)(7); *Dean.* Even absent this waiver, RAM has failed to show how it was harmed by this finding. Again, we find no error.

*Issue Four*

RAM's next assertion of error concerns the Commission's refusal to take administrative notice of a motion made by RAM in another proceeding in which Digital was seeking a certificate to operate its radio paging system in Marion county. In its motion, RAM sought to have Digital's petition dismissed.[7] RAM now argues the Commission should have taken administrative notice of the motion because it reflected upon Digital's financial, technical, and managerial abilities, and was, therefore, relevant to the proceedings in the instant case.

■ In its proceedings, the Commission may "upon request of a party, take administrative notice of any matter which may be judicially noticed by a Court of the State of Indiana. In addition, the Commission may take administrative notice of specified matters shown by its files upon request of a party." 170 Ind.Admin.Code § 1–1–18(f) (1979). Hence, because judicial notice may be taken of "matters of common knowledge of which there is a certainty and of which there is no dispute[,]" *School City of Gary v. State ex rel. Gary Artists' League, Inc.,* (1970) 253 Ind. 697, 703, 256 N.E.2d 909, 912, the Commission had such authority. 170 IAC § 1–1–18(f).

An administrative law judge, as a trial court judge, has discretion over the matters of which he takes notice, especially where the "facts [are] subject to proof without evidence to support the same." *Walton v. Wilhelm,* (1950) 120 Ind.App. 218, 226, 91 N.E.2d 373, 377.

RAM argues its motion for involuntary dismissal in Digital's Marion county proceedings was evidence of which the Commission should have taken administrative notice. The motion, however, was clearly not evidence. Moreover, since the motion is not in the record and presents no issue concerning confiscation or constitutional rights, it cannot now be considered. Ind. Code § 8–1–3–7 (1982 Repl.).

By seeking to introduce its motion from the previous proceeding, RAM was essentially attempting to discredit the testimony of Digital's expert witness. We note, however, that this particular witness was present during these proceedings and did in fact testify, thereby giving RAM the opportunity to subject him to cross-examination. We therefore find no error in the Commission's refusal to take judicial notice of RAM's motion.

*Issue Five*

RAM further asserts that the Commission's finding regarding the competitiveness of Digital's rates was irrelevant and prejudicial insofar as it evinced the Commission's preoccupation with competition among RCCs to the exclusion of fulfilling its duty to simply determine whether the proposed rates were reasonable.

■ Referring to the rates proposed by Digital, the Commission found "that such charges are fair, reasonable, just and non-discriminatory, competitive with other radio common carriers providing radio paging service and should be approved and it will be so ordered." Record at 938. In RAM's

---

7. According to RAM, its motion to dismiss was premised upon Digital's use of prefiled testimony of an expert witness concerning its technical abilities which RAM alleges was nearly identical to that of another witness in a different proceeding. In RAM's view, this testimony was suspect and gave rise to the inference in Digital's Marion County proceedings that its technical abilities were inadequate. RAM argues that Digital's abilities with respect to the seven county proceedings were likewise suspect and its motion to dismiss was relevant to establishing this allegation in the present proceeding.

view the finding regarding the competitiveness of the rates should be stricken. We disagree. The Commission clearly fulfilled its duty by finding the proposed rates to be reasonable, and its observation that they were competitive as well was, if anything, merely surplusage. Moreover, RAM fails to explain how this finding was in any way prejudicial to its interests. Accordingly, we find no error here.

*Issue Six*

RAM next argues the Commission erred in failing to articulate in its findings the meaning it ascribed to the term "public convenience and necessity". According to RAM, this resulted in the Commission making a decision which was not properly based upon ascertainable standards.

■■■ While RAM is correct in arguing that administrative decisions must be premised upon ascertainable standards, *Natural Resources Commission v. Sullivan,* (1981) Ind.App., 428 N.E.2d 92, 101; *Clarkson v. Department of Insurance,* (1981) Ind.App., 425 N.E.2d 203, 207, *trans. denied,* we have refused "to establish for all cases, a qualitative and quantitative evidentiary standard for proof of public convenience and necessity." *V.I.P.,* 171 Ind.App. at 115, 355 N.E.2d at 445. Instead, we held "that the formulation of 'minimum standards of proof' or evidentiary criteria which will aid the Commission in determining the presence or absence of the ultimate facts in a given common carrier case must be left in large measure to the informed discretion of the Commission." *Id.*

In accordance with this reasoning, the Commission made the following observation in the instant proceedings:

"we reiterate here, that the principle that specific evidentiary factors necessary to establish public convenience and necessity may not be categorized or fixed is sound and applicable in a proceeding for a Certificate of Territorial Authority to provide RCC 'telephone service.'

In determining what public convenience and necessity require, the Commission must consider all evidence and factors pertaining to the public's need for the service. Accordingly, we turn to the evidence presented herein."

Record at 928–29. The Commission then went on to cite the results of surveys conducted by the competing RCCs which revealed a need for their services in the seven county area as well as the varied paging systems each of the RCCs proposed to offer in an attempt to satisfy the various needs of potential customers. *Id.* at 929.

■■■ In view of these findings we do not believe the Commission abused the discretion with which it is vested in articulating the meaning of public convenience and necessity.

*Issue Seven*

■■■ RAM next attacks the Commission's utilization of a subjective test in determining market potential for paging services in the seven counties. Specifically, RAM challenges the following finding:

"That the Commission, in recognizing that there are many variables in the way RCC customers use their service, now finds that the determination of the number of RCCs required to meet the demand in said counties may not be established solely by the number of units to receive service, but would also require consideration of the frequency of use by each customer, the duration of each use, and the time when such use takes place. The establishment of objective standards taking into consideration such variables would be in duplication or even possible conflict with the FCC in its determination of the allocation of frequencies. Such allocation is within the *exclusive* jurisdiction of the FCC. Therefore, the Commission in determining the issuance of Certificates of Territorial Authority to two or more RCCs for a given area will apply a subjective test of market potential. In doing so, the Commission recognizes that such may result in uncertainty as to what evidence is required by applicants. This uncertainty could be eliminated by the applicants first obtaining FCC au-

thority and allocation of a frequency prior to applying to this Commission. The statutes and our Rules do not require such condition precedent and thus applicants will, presently at least, have to endure such uncertainty."

Record at 930–31 (emphasis in original).

RAM argues that by adopting a subjective test, the Commission effectively abrogated to the FCC its duty to grant certificates only when public convenience and necessity are present, contrary, RAM asserts, to Indiana Code section 8–1–2–88.

RAM has again misconstrued the Commission's findings in an attempt to establish that a proper determination of public convenience and necessity was not made. In fact, the Commission *did* make the requisite finding of public need, and in the finding now challenged by RAM was merely noting that the ultimate allocation of frequencies was within the exclusive jurisdiction of the FCC. Expressing this thought, the Commission stated:

"[T]he technical regulation of Radio Common Carriers (RCCs) is *primarily* vested in and administered by the Federal Communications Commission (FCC), in that the FCC regulates the allocation of frequencies, transmitter power, antenna radiation patterns, antenna location and height and the licensing of operators.

The regulation of RCCs by this Commission is *limited* primarily to the initial determination of public convenience and necessity for the allocation of a Certificate of Territorial Authority and the determination of fair, reasonable, just and non-discriminatory rates, charges, rules, and regulations."

Record at 918–19 (emphasis in original).

The Commission in no way delegated its authority to the FCC by acknowledging their respective roles in the regulation of RCCs. Rather, it merely defined their respective roles and confined its actions to the determination of whether public convenience and necessity required the granting of certificates, leaving the ultimate allocation of frequencies to the FCC. Accordingly, we find no error here.

*Issue Eight*

As its next assignment of error, RAM asserts the Commission erred as a matter of law in its adoption and application of a theory of regulated competition instead of regulated monopoly in the granting of a certificate to Digital. In making its decision, RAM argues the Commission placed undue emphasis on competition among the several RCCs and failed to observe its statutory duty to consider first the issue of public convenience and necessity. In support of its argument, RAM directs our attention to *Hawaiian Telephone Co. v. FCC*, (D.C.Cir.1974) 498 F.2d 771. In that case the court held that:

"When the FCC considers an application for certification of a new line, it must start from the situation as it then exists, and must apply the statutory standard to determine whether indeed the public convenience and necessity requires more or better service. If it determines that more or additional competitive service would be in the public interest, then it can consider how much added service is necessary, and finally to whom the opportunity for providing service should be awarded. In this latter determination the Commission can balance equities and opportunities among the various carriers. The initial question for the Commission, however, must be whether the public interest requires more or different service."

*Id.* at 776. Thus, the court concluded:

"Looming large in the Commission's rationale, indeed, undeniably the key factor in its decision, is competition. Competition as a factor might have some relevance to the FCC decision, if competition had been shown to be of benefit to the public on the communication routes in question. Yet it is all too embarrassingly apparent that the Commission has been thinking about competition, not in terms primarily as to its benefit to the public, but specifically with the objective of equalizing competition among *competitors*.

This is *not* the objective or role assigned by law to the Federal Communications Commission. As a result of focusing first on competitors, next on competition, and then on the public interest, the FCC has given scant attention to the question of public convenience and necessity, and therefore has not met its statutorily imposed duty."

*Id.* at 775–76 (emphasis in original).

In the instant case, RAM argues the Commission, like the FCC in *Hawaiian Telephone,* placed too much emphasis on competition and too little on the public's need for the proposed services. We disagree.

As Digital has argued, the Commission gave consideration to the issue of competition but only after concluding public convenience and necessity required the granting of the certificates. What *Hawaiian Telephone* held, essentially, was that competition was a relevant consideration provided it did not precede the consideration of the public interest. Here, the Commission's consideration of the competition issue was made only after that of the public interest. We therefore do not believe the Commission erred in this respect.

*Issue Nine*

█ RAM's final contention concerns the distinction made by the Commission between RCCs and landline telephone companies. The specific finding challenged by RAM pertains to the distinction made by the Commission with regard to the finite capabilities of an RCC and infinite capabilities of a landline company in terms of the number of customers each can serve. Record at 925–26. In RAM's view, this distinction has no basis in Indiana law since it is not made in Indiana Code section 8–1–2–88.

RAM is correct insofar as Indiana Code section 8–1–2–88 does not distinguish between RCCs and landline companies. In fact, it provides for an identical standard for each in the granting of certificates to service providers that wish to offer their services in an area already served by another provider. However, the distinction made by the Commission was merely an observation that RCCs and landline companies are fundamentally different with respect to the number of customers each can ultimately serve. By "finding", as RAM charges, that the number of frequencies granted an RCC effectively places a limit on the number of customers it can serve, the Commission was simply stating the obvious. Likewise, when the Commission observed that a landline company does not have the same limitation, the Commission was again stating what was obvious within its area of expertise. Therefore, we find no error in the distinction drawn by the Commission nor do we believe it was in any manner contrary to law.

Finding no error in the Commission's order, we affirm.

Affirmed.

NEAL, P.J., and ROBERTSON, J., concur.