V.I.P. LIMOUSINE SERVICE, INC. *v.* HERIDER-SINDERS, INC.

[No. 2-774A161. Filed October 7, 1976.]

*Alki E. Scopelitis, Sommer, Tinkham, Barnard, Freiberger & Scopelitis,* of Indianapolis, for appellant.

*Fred W. Garver, Richard E. Aikman, Jr., Michael K. Irwin, Stewart, Irwin, Gilliom, Fuller & Meyer,* of Indianapolis, *Stephen W. Sutherlin,* of Indianapolis, for appellee.

SULLIVAN, J.—The Public Service Commission granted a certificate of public convenience and necessity which authorized Herider-Sinders, Inc. (Herider), to conduct, as a common carrier, an intrastate charter limousine service. V.I.P. Limousine Service, Inc., (V.I.P.), a protestant in the proceedings before the Commission, appeals.

Ind. Ann. Stat. 8-2-7-15 (Burns Code Ed. 1973), the statute which regulates the authority of the Commission to issue common carrier certificates, sets forth only two broadly stated criteria: (1) "that public convenience and necessity requires the proposed operation" and (2) "that the proposed operation will not unreasonably impair the existing public service of any authorized common carrier. . . .". These criteria constitute the ultimate facts to be found by the Commission before a certificate may be issued. However, judicial review may not be conducted solely with reference to findings which are limited to these ultimate facts.

As stated in *City of Evansville* v. *Southern Indiana Gas & Electric Co.* (1976), 167 Ind. App. 472, 339 N.E.2d 562, 571:

". . . the statutory standard requires that the Commission's decision contain specific findings on all the factual determinations material to its ultimate conclusions."

Thus, the Commission must find the "basic facts" which support a conclusion that the ultimate fact exists. *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App., 289 N.E.2d 737, *reversed on other grounds* 262 Ind. 41, 311 N.E.2d 424. In the latter case we said:

". . . the specific findings we need are those which are relevant to the contested issues, the disputed issues, which is to say, the specific facts which are basic to the ultimate facts upon which the parties have been unable to agree.

As to the other elements of the claimant's burden of proof, the uncontested and undisputed elements, on which the Board must make a finding, it is relatively unimportant whether the facts are found specifically or whether the Board merely 'mouthes the general language of the statute' ". 289 N.E.2d at 744. (footnotes omitted.)

We may not, under the guise of judicial review, infer from the findings of ultimate fact the existence of the basic facts essential to those ultimate conclusions. To do so is ■ to indulge in the fact findnig process which is the exclusive domain of the Commission. *Transport Motor Express, Inc.* v. *Smith, supra.*

The basic contention of V.I.P. upon appeal is that the evidence before the Commission showed, at best, a mere preference, as opposed to need, by some members of the public for the service proposed by Herider. Further V.I.P. contends that with reference to the adequacy vel non of existing service, the evidence shows only isolated instances in which existing service was less than fully adequate. V.I.P. thus argues that the evidence falls short of establishing the requisite public convenience and necessity and does not establish that existing limousine service will not be unreasonably impaired. These disputed or contested issues are not in any manner resolved by the Commission's findings. Those findings are, in their entirety, as follows:

"The Commission, having examined the application, the evidence introduced in this cause, the Exceptions of the Protestant V.I.P. Limousine Service, Inc. and their brief in support thereof, and being duly advised in the premises, is of the opinion and now finds:

1. That the Commission has jurisdiction of the parties hereto and the subject matter of this cause, which now are properly before the Commission for finding, determination and order.

2. That the motion to dismiss that portion of the application dealing with Medical Car escort service on the grounds that such service was not presently or ever has been regulated by the Public Service Commission should be granted; and it will be so ordered.

3. That the Applicant is an Indiana corporation, with its office located at 961 N. Meridian Street, Indianapolis, Indiana 46204.

4. That the proposed amended operations will not unreasonably affect the efficient public service of any authorized common carrier, intrastate, in the area to be served by the Applicant.

5. That the character and condition of the motor vehicle equipment proposed to be used by Applicant upon the public highways of Indiana are such that same may be operated without injury or damage to such highways, and without unreasonable interference with the use of such highways by the general public.

6. That Applicant and its employees are able and willing to comply with the laws of Indiana and the Rules and Regulations of the Public Service Commission as the same apply to a common carrier of passengers, intrastate.

7. That Applicant has sufficient and well-maintained equipment and sufficient and well-trained personnel to render the proposed service; and that Applicant has the financial ability to render the proposed service.

8. That the Exceptions of Protestant V.I.P. Limousine Service, Inc. should be overruled, and it will be so ordered.

9. That the public convenience and necessity require the granting of the application for the requested authority as amended; and that a certificate of public convenience and necessity should be issued to the Applicant in accordance herewith; and it will be so ordered."

V.I.P. urges us to establish certain "minimum standards of proof" or "a minimum burden of proof" which must be met by an applicant in every common carrier proceeding, citing *Graves Trucking, Inc.* v. *B. G. Trucking, Inc.* (1972), 151 Ind. App. 563, 280 N.E.2d 834.

V.I.P. has misconstrued the import of the Graves Trucking decision. That case involved an application seeking authority to operate as a contract carrier pursuant to Ind. Ann. Stat. 8-2-7-2 (h) (b) (Burns Code Ed. 1973) and 8-2-7-20 (Burns Code Ed. 1973). The court there concluded that the evidence before the Commission was insufficient to support the granting of a certificate saying:

"We are of the opinion that some minimum standards of proof should be established to prevent the development of a practice whereby the supporting shippers may designate and select at will the carriers that they prefer to handle their commodities. This not only would work a great disadvantage upon the common carriers authorized to handle such commodities but would usurp the statutory duty of the Public Service Commission of Indiana and circumvent

the clear intent of the Legislature. Selection of a favorite contract carrier by shippers without some standards of proof to protect the public could eventually precipitate an erosion of common carrier service to the public which the statute prohibits. Therefore, we hold that the following minimum standards of proof should be met. In addition to the testimony of each individual shipper stating the specific transportation service required to satisfy its distinct needs, each supporting shipper should testify to the following:

1. Identify the commodities shipped or received.
2. Describe the traffic movements of these commodities to and from given points or areas.
3. State the approximate volume of these commodities to be tendered the applicant.
4. State the carrier service now being used to move the shipper's traffic.
5. State deficiencies, if any, in existing carrier service to shipper.
6. Each individual shipper should state his knowledge of existing carrier service authorized to carry the commodities being considered by the Commission."

289 N.E.2d at 839-40.

*Graves Trucking,* does not call for the establishment of a unique, inflexible minimum standard of proof applicable to every type of contract or common carrier application. The context in which the *Graves* case speaks of minimum standards or a minimum burden connotes the nature and type of evidence necessary to support the issuance of a contract carrier certificate. Contract carriers are required "to meet the distinct need of each individual customer" Ind. Ann. Stat. 8-2-7-2 (h) (b), *supra.* The "distinct need" criterion is more susceptible to specificity of evidence than the "public convenience and necessity" criterion which must be met by a common public carrier. Within that susceptibility lies the distinguishing point between *Graves Trucking, supra,* and this case.

In the "distinct need" contract carrier situation, the supporting shippers are a clearly defined evidentiary source, whose needs are to be served by the applicant. The identified individual shippers can readily testify as to the specifics of

their respective "distinct needs". The common carrier applicant may not so readily amass and present supportive evidence, since that evidence must relate to a multi-faceted, if not illusory, conglomerate—the public at-large. Because the public's needs and demands are gauged by many variables, specific evidentiary factors necessary to establish "public convenience and necessity" may not, therefore, be categorized or fixed.

It ill behooves a court of review to establish for all cases, a qualitative and quantitative evidentiary standard for proof of public convenience and necessity. We hold, therefore, that the formulation of "minimum standards of proof" or evidentiary criteria which will aid the Commission in determining the presence or absence of the ultimate facts in a given common carrier case must be left in large measure to the informed discretion of the Commission.

The evidentiary discussion hereinabove, bears importantly upon our ability to meaningfully review the order of the Commission. In certain instances to say that findings of basic fact are required is to say not enough. In some instances, as here, the ultimate fact may depend upon myriad factors which do not and cannot fit within an established or fixed set of essential elements. A mere recitation of the factors considered and found as fact may do no more to facilitate judicial review than a finding of the ultimate fact. It is thus appropriate to say that we need not only findings of basic facts but we must know how and why and to what purpose the administrative agency utilized those facts in reaching its ultimate conclusion. A rational relationship between the facts found and the conclusion reached must exist and should be stated. We need then, in addition to the findings of fact, a statement of the reasons for the agency's ultimate determination. *See Easley* v. *Metropolitan Board of Zoning Appeals* (1974), 161 Ind. App. 501, 317 N.E.2d 185 at 192-193. That statement of reasons should embrace a reference to the basic facts found, relating those

basic facts to the ultimate fact within a framework of the law which defines the issues to be decided, i.e., those issues which are disputed by parties.

It may be argued here that the disputed issues upon which the Commission has made no findings are in reality issues of law rather than of fact. *See Transport Motor Express, Inc.* v. *Smith* (1974), 262 Ind. 41, 311 N.E.2d 424, *supra.* Even if this be true, resolution of those issues of law necessitates resort to facts which have not been specifically found by the Commission.

The disputants are in disagreement as to the permissible legal effect which the Commission was entitled to give to the evidence before it. V.I.P. asserts that, at most, the evidence establishes a mere preference indefinitely stated by various possible users of limousine service, and that the evidence is insufficient to show that existing limousine service was inadequate to meet the public need. Accordingly, it is necessary that we address ourselves to the meaning of "public convenience and necessity."

Mere public convenience, standing alone, is not sufficient basis for issuance of a common carrier certificate. Proof of public necessity inferentially establishes public convenience. The crucial determinant is, therefore, public necessity, a concept not susceptible to rigid or precise definition.

The public need must be considered in an economic and social sense. It does not mean that without the proposed service, the economic or social survival of the public is threatened. In 1 Watkins, *Shippers and Carriers,* § 5-3, p. 550 (5th Ed. 1962) it is stated as follows:

"The word necessity must be somewhat liberally construed, for comparatively few things can be regarded as an absolute necessity. . . . Convenience and necessity implies more than adequacy or availability of agencies by which a traveller can be conveyed from one point to another, without regard to special and distinguished characteristics of the

service afforded, just as it implies something less than an absolute and acute need."

Our own Indiana Public Service Commission long ago adopted a similar construction of the essential criterion in *In Re Allen, d/b/a Indiana Scenic Bus Line,* No. 2376-A, 3 (June 11, 1946):

"The primary consideration underlying the granting of a certificate of public convenience and necessity for the operation of a motor bus service is a public need for the service. Such a certificate can only be granted by the Commission upon the finding and determination that the proposed service is necessary for the accomodation, convenience, and safety of the public. The mere showing on the part of the applicant and supporting witnesses that the proposed service would be convenient is not proof of public convenience and necessity. The public need is the paramount issue. What constitutes public convenience and necessity as a basis for the issuance of a certificate of convenience and necessity depends upon the facts and circumstances of each given case as it arises. . . .

The Commission cannot issue a certificate of public convenience and necessity on a mere showing that it may be a convenience but it is not a necessity. Public convenience and necessity, present and future, is the controlling factor. Convenience, as used in the statutes relating to a certificate of convenience and necessity, is not used in an ordinary sense as synonymous with handy or ease of access. Necessity, as used in the statutes relating to certificates of convenience and necessity, is not used in its ordinary sense as an indispensable requisite but the word has a relative rather than an absolute inference and no definition can be given that would always be the same under different sets of facts."

The flexibility of the concept of public necessity and the broad range of factual circumstances bearing upon application of that concept to a given common carrier certificate request, do not, however, permit the Commission to find public necessity upon the sole basis of the subjective preferences, desires, or needs of an isolated few. It was well stated in *Seaboard Air Line Ry. Co.* v. *Wells* (1930), 100 Fla. 1027, 1042-43, 130 So. 587, 593:

" 'Whether the public convenience and necessity require the establishment of a new transportation facility is not determined by the number of individuals who may ask for it. The public must be concerned, as distinguished from any number of individuals. [State] Public Utilities Com. v. Toledo, St. Louis & Western Railroad Co., 286 Ill. 582, 122 N.E. 158. Some individuals—perhaps a considerable number—would be convenienced by the operation of the bus lines; but it is clear from the record that to the great body of the public it would be neither a convenience nor necessity. It was not within the authority of the commission to authorize the operation of the bus lines for the convenience of a small part of the public already served by other utilities at no very great inconvenience.' " (citations omitted.)

Again, our own Public Service Commission has expressed itself in accord with this basic premise, stating in *In Re Public Service Co. of Indiana, Inc.*, No. 19520 (1947) 71 P.U.R. (N.S.) 45, 51:

"The convenience and necessity which is required is the convenience and necessity of the public, as distinguished from that of an individual or any number of individuals and from that of the corporations or individuals applying for or opposing the declaration sought."

Although the "public" which needs charter limousine service no doubt consists of fewer individual members than does the "public" which needs bus transportation, the legal framework within which the Commission may exercise its regulative discretion has thus been articulated. We reaffirm those legal principles as a minimal source of guidance for the Commission with respect to common carrier applications.

As we have hereinbefore stated, the findings and conclusions of the Commission in this matter are incapable of meaningful judicial review. Not only is there an absence of findings as to basic facts, but the Commission has failed to demonstrate what it deems the applicable law to be. Review is impossible here because the order of the Commission is the result of an unexplained application of unfound basic facts to unstated legal principles which may or may not be controlling.

If the evidence here is found to establish mere preference on the part of a few possible users, it is clearly insufficient in law to justify issuance of a certificate. Conversely, if the evidence reasonably demonstrates a truly public need, the Commission must justify that conclusion by recitation of the facts and reasoning which lead to that conclusion. A similar evidentiary evaluation and legal reasoning process must be set forth with respect to the adequacy of existing limousine service.

We now, therefore, reverse the decision of the Commission and direct that the order which resulted in issuance of the certificate of public convenience and necessity be, and the same is hereby, vacated and set aside. The cause is now remanded to the Commission for further proceedings consistent with this opinion.

Buchanan, P.J., and White, J., concur.

NOTE.—Reported at 355 N.E.2d 441.