RAM BROADCASTING OF
INDIANA, INC.,

and

Radiotelephone Company of Indiana,
Inc., Respondents-Appellants,

v.

DIGITAL PAGING SYSTEMS OF INDIANA, INC., Petitioner-Appellee,

and

Indiana Bell Telephone Company, Incorporated, Hendricks Telephone Corporation, Hancock Rural Telephone Corporation, and T.A.S.I., Inc., Respondents-Appellees.

No. 2–1182 A 373.

Court of Appeals of Indiana,
First District.

May 15, 1984.

Jerry Williams, Nancy E. Wever, Williams & Shoup, Indianapolis, for respondents-appellants.

James L. Petersen, James A. Shanahan, Robert B. Clemens, Ice, Miller, Donadio & Ryan, Indianapolis, for petitioner-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

RAM Broadcasting of Indiana, Inc. (RAM) and Radiotelephone Company of Indiana, Inc. (RTI), appeal from the decision of the Public Service Commission of Indiana (Commission) granting Digital Paging Systems of Indiana, Inc. (Digital) a Certificate of Territorial Authority to operate a radio paging system in Marion County, Indiana.

We affirm.

## FACTS

In April of 1979, Digital filed its petition with the Commission seeking a Certificate of Territorial Authority to operate a radio paging system in Marion County. At that time, both RAM and RTI held certificates enabling them to offer mobile telephone and paging services to the public in Marion.[1] Each opposed Digital's petition.

Following more than three years of proceedings, the Commission entered its order granting Digital a certificate on October 13, 1982. Thereafter, RAM and RTI perfected their appeal.

Additional facts are stated in our discussion of the issues.

## ISSUES

The issues raised by the appellants, restated in the interest of clarity, are:

1. Did the Commission err in failing to make findings regarding alleged "plagiarism" in the pre-filed testimony of one of Digital's witnesses?

2. Was the Commission's order contrary to law with respect to several evidentiary rulings?

3. Was the Commission's finding of basic fact that failure to grant Digital a certificate would result in an unfair competitive advantage to its competitors supported by substantial evidence?

4. Was the Commission's finding of basic fact regarding the validity of Digital's telephone inquiries supported by substantial evidence?

5. Did the Commission's findings of basic fact support the ultimate conclusion that public convenience and necessity required the granting of a certificate to Digital?

6. Did the Commission's findings of basic fact support the ultimate conclusion that Digital possessed the technical and managerial ability to provide radio paging services?

7. Did the Commission err in failing to articulate the meaning it ascribed to the term "public convenience and necessity?"

8. Did the Commission err in failing to establish objective standards for determining whether to grant Digital a certificate?

9. Did the Commission err in adopting and applying a theory of regulated competition as opposed to regulated monopolization in the granting of a certificate to Digital?

---

1. On September 19, 1979, T.A.S.I., Inc., was granted a similar certificate. T.A.S.I., however, is not a party to this action.

10. Was the distinction drawn by the Commission between RCCs[2] and landline telephone companies regarding the finite capabilities of RCCs contrary to law?

## DISCUSSION AND DECISION

*Issue One*

The appellants first challenge the prefiled testimony of Digital's engineering witness Alan Gruber concerning Digital's technical and managerial ability to provide the radio paging services it proposed. According to the appellants, Gruber's testimony was a plagiarized version of the testimony of an engineering witness for T.A.S.I. in its separate proceeding before the Commission seeking a certificate to serve Marion County. Thus, the appellants submit, because the nature of Gruber's testimony concerned the ability of Digital to serve the public, the Commission erred in failing to make findings of basic fact regarding the alleged plagiarism.

Digital readily concedes Gruber's testimony was nearly identical to that of T.A.S.I.'s witness. However, Digital submits its use of an identical question and answer format was prompted by the fact it was successful in the qualification of the T.A.S.I. witness as an expert and in the Commission's conclusion that T.A.S.I. possessed the requisite abilities. Moreover, Digital argues, even if the format of Gruber's testimony was similar, the substance was not. In fact, Digital asserts, it was quite different insofar as Gruber's testimony pertained to the technical data applicable to Digital and not T.A.S.I.

■ Whether the format of Gruber's testimony was similar or even identical in part to that of a witness in a prior unrelated proceeding misses the point. What the Commission determined was that Digital possessed the requisite abilities. Thus, the fact that the questions propounded to Gruber tracked those put to a witness in an unrelated proceeding fails to bear on the question of whether, in the instant proceed-

ings, Digital convinced the Commission of its technical abilities. Viewed from this perspective, the appellants' argument is merely an invitation to reweigh the evidence that was before the Commission and resolve Gruber's credibility. We must refuse the invitation. *Southern Railway Co. v. Board of Commissioners of Vanderburgh County,* (1981) Ind.App., 426 N.E.2d 445, 447–48, *trans. denied* (1982).

*Issue Two*

The appellants next contend the Commission erred in the admission of the results of telephone surveys conducted by Digital and in the exclusion of evidence regarding Digital's affiliates. Addressing first the admission of the telephone survey results, the appellants argue this evidence was hearsay and constituted the only evidence regarding public need, thereby making the Commission's reliance thereon contrary to *C.T.S. Corp. v. Schoulton,* (1978) 270 Ind. 34, 383 N.E.2d 293.

In *C.T.S. Corp.,* our supreme court established that while an administrative decision may rely upon hearsay, it may not rest exclusively upon that evidence. Instead, there "must be a 'residuum' of legal evidence to support [it.]" *Id.* at 38, 383 N.E.2d at 295. *See also Cornell v. Review Board of the Indiana Employment Security Division,* (1979) 179 Ind.App. 17, 383 N.E.2d 1102.

■ While the appellants argue the Commission premised its finding of public need for Digital's services solely upon the results of the telephone surveys, such was not the case. Examination of the record reveals the Commission also relied upon extensive demographic evidence pertaining to population statistics as well as the number and type of employers in Marion County. In addition, the Commission even noted the testimony of RAM's general manager concerning market potential:

---

2. RCC is the acronym frequently used to refer to radio common carriers such as RAM, RTI, and Digital.

"20. RAM's General Manager, Mary Small, testifying as a witness for RAM, stated that a conservative estimate of the potential market for paging units is 2% of the population living and working in the market area. Based on her estimate, which was admittedly conservative, she testified that the potential market for paging service in Marion County is in excess of 20,000 units. The evidence indicated that RAM, T.A.S.I., Radiotelephone and Indiana Bell have less than 11,500 paging units in service at this time, which demonstrates that a sizeable unmet need for paging service exists in the Marion County market."

Record at 425. All of this evidence was in addition to the telephone surveys of which the appellants now complain. Thus, even if those results were incompetent hearsay, there was an abundance of competent evidence supportive of the Commission's finding and we will not set it aside. *Cornell; L.S. Ayres & Co. v. Indianapolis Power and Light Co.*, (1976) 169 Ind.App. 652, 700, 351 N.E.2d 814, 844, *trans. denied* (1977).

Additionally, the appellants attack the Commission's refusal to admit evidence regarding alleged misconduct of certain Digital affiliates. They argue this evidence was relevant to Digital's ability to provide the proposed paging services and thus, should have been admitted. In support of their argument the appellants direct our attention to *Nordhoff v. Review Board of the Indiana Employment Security Division*, (1959) 129 Ind.App. 378, 156 N.E.2d 787, where we held the review board, like a trial court, is not permitted to ignore competent and uncontradicted evidence. *Id.* at 383, 156 N.E.2d at 789.

In the instant proceedings, however, the evidence concerning Digital's technical and managerial abilities was far from being uncontradicted. Moreover, we find ourselves in agreement with the Commission that the alleged misconduct of Digital's corporate affiliates bears no relevancy upon the ability of Digital to provide radio paging services in Marion County. Accord-

ingly, we do not believe the Commission abused its discretion in refusing to admit this evidence.

*Issue Three*

The appellants also attack the Commission's finding of basic fact that a failure to grant Digital a certificate would result in an unfair competitive advantage to those RCCs already operating in Marion County. In the appellants' view, this finding is not supported by substantial evidence, and even assuming it is, the finding is irrelevant.

The specific finding challenged by the appellants reads as follows:

"19. The Petitioner and each of the Respondents hold certificates of territorial authority to render paging service within the seven counties contiguous to Marion County, Indiana. In granting such certificates, the Commission considered it a factor that all of the carriers held or had applied for a certificate to render service in Marion County. That Petitioner and Respondents hold certificates for the seven contiguous counties is similarly a factor in this proceeding. To allow Respondents to render service in Marion County while denying authority to the Petitioner would deprive the residents and workers of Marion County of the same number of carriers from which to choose as is available to the residents and workers in the counties surrounding Marion County. It would also tend to give Respondents an unfair competitive advantage over Petitioner in marketing its services in the seven counties. In order for Petitioner to adequately serve residents of those counties while they are in Marion County, Petitioner would have to construct a transmitter in Indianapolis. To have such a facility in Marion County without being able to market services to those persons living or working in the vicinity of that facility would result in the uneconomic use of said facility and a disservice and inconvenience to those persons who would be unable to obtain the services of such

facility merely because they live inside the Marion County line."

Record at 424–25.

■ In our view, this "finding" does not constitute a basic finding of fact upon which the Commission premised its ultimate conclusion that public convenience and necessity required the granting of a certificate to Digital. Instead, we believe the Commission was merely acknowledging the likely result if it chose not to grant Digital a certificate. And while a trial court may well have needed evidence to make such an observation, we do not believe the Commission was without sufficient expertise to so find even absent supporting evidence.

■ Nor do we believe, as appellants contend, that the Commission's finding regarding competitive advantage was irrelevant. While the Commission's observation may not have been a controlling factor, we believe it was relevant. *Cf. Decatur County Rural Electric Membership Corp. v. Public Service Co. of Indiana, Inc.,* (1970) 146 Ind.App. 699, 710, 258 N.E.2d 180, 187, *trans. denied* (evidence of customer preference for one utility over another while not a controlling factor in determining public convenience and necessity was relevant). *See also Indiana Bell Telephone Co., Inc. v. T.A.S.I.,* (1982) Ind.App., 433 N.E.2d 1195, 1202, *trans. denied.*

### Issue Four

The appellants next contend the Commission's basic finding of fact regarding the validity of Digital's telephone surveys was not supported by substantial evidence. Essentially, the appellants are attacking the integrity and credibility of the results obtained in the surveys and requesting this court to reweigh that evidence and rejudge its credibility.

■ As we have previously stated, it is not the office of this court to reweigh the evidence. *Southern Railway Co.,* 426 N.E.2d 447–48. Furthermore, we have reviewed the evidence in the record and find there is sufficient evidence of probative value to support the Commission's decision to admit the results of the surveys. Accordingly, we will not disturb it.

### Issue Five

■ Next, the appellants challenge the Commission's ultimate conclusion that public convenience and necessity required the granting of a certificate to Digital. Specifically, they allege the Commission's basic findings of fact regarding this conclusion were insufficient and, in turn, that these findings were not supported by substantial evidence.[3]

■ While this court is reluctant to disturb administrative findings, *Office of the Public Counselor v. Indianapolis Power and Light Co.,* (1980) Ind.App., 413 N.E.2d 672, 675, we have held that PSC decisions must contain "specific findings on all factual determinations material to its ultimate conclusions." *City of Evansville v. Southern Indiana Gas and Electric Co.,* (1975) 167 Ind.App. 472, 483, 339 N.E.2d 562, 571. *See also Citizens Action Coalition of Indiana, Inc. v. Public Service Company of Indiana,* (1983) Ind.App., 450 N.E.2d 98, 101–02; *Citizens Energy Coalition, Inc. v. Indiana & Michigan Electric Co.,* (1979) Ind.App., 396 N.E.2d 441, 447, *trans. denied* (1980); *L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* (1976) 169 Ind.App. 652, 661, 351 N.E.2d 814, 822, *trans. denied* (1977). In other words, there must be sufficient findings of basic fact to support the ultimate conclusions of the Commission. *Indiana Bell Telephone Co., Inc. v. T.A.S.I., Inc.,* (1982)

---

**3.** In a related argument, the appellants contend the Commission's basic finding of fact that the granting of a certificate to Digital would not result in wasteful duplication of facilities by the competing RCCs was not supported by substantial evidence. This is so, they assert, because "[t]here is ample evidence ... that the existing RCC's ... could accommodate the estimated potential market for paging services." Appellants' brief at 82. Again, the appellants invite us to reweigh the evidence. There was also ample evidence of unsatisfied need supportive of the Commission's decision. We are not in a position to make a redetermination.

Ind.App., 433 N.E.2d 1195, 1200, *trans. denied.*

■ We next examine the record to ascertain whether there is substantial evidence to support the basic findings of fact, and in turn, whether the ultimate conclusions can be reasonably inferred from those findings. *Citizens Energy Coalition*, 396 N.E.2d at 447; *City of Evansville*, 167 Ind.App. at 484, 339 N.E.2d at 571. Provided an affirmative determination is made, the decision will be affirmed.

The findings here challenged by the appellants read as follows:

> "29. Petitioner's demographic evidence, the testimony of the witnesses and the market surveys establish, and the Commission finds, that public convenience and necessity *support* the granting of a certificate of territorial authority to Petitioner to render mobile radio telephone and paging service to the public within the geographic area of Marion County, Indiana, and it will be so ordered."

Record at 431 (emphasis supplied).

The appellants argue the Commission erred in finding the evidence "support[ed]" the granting of a certificate as opposed to the statutory language which utilizes the word "require". Indiana Code section 8–1–2–88(b). We disagree.

**4.** In its findings, the Commission referred to evidence regarding population, number of business establishments in and around Marion County, employment patterns, and surveys regarding the potential market for radio paging services.

In view of these findings, we cannot say the Commission erred in reaching the ultimate conclusion that public convenience and necessity required the granting of certificates to four RCCs. As we noted in *V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc.,* (1976) 171 Ind.App. 109, 355 N.E.2d 441, the concept of public necessity is not "susceptible to rigid or precise definition." *Id.* at 116, 355 N.E.2d at 445. Rather, we held, "[b]ecause the public's needs and demands are gauged by many variables, specific evidentiary factors necessary to establish 'public convenience and necessity' may not, therefore, be categorized or fixed." *Id.* at 115, 355 N.E.2d at 445. Moreover, "[t]he degree of

■ By finding the evidence supported the granting of a certificate, the Commission was, in essence, finding the evidence comported with the requirements of the statute. Thus, we fail to see the flaw in the Commission's use of the word support instead of require. Further, in our view, the Commission's findings of basic fact and references to the evidence before it,[4] lead us to believe its ultimate conclusion was justified and that there was substantial evidence to support it.

*Issue Six*

The appellants also challenge the Commission's ultimate conclusion that Digital possessed the technical and managerial abilities necessary to render the proposed paging services. In their view, there are insufficient findings of basic fact to support this conclusion.

Regarding Digital's qualifications, the Commission found, *inter alia:*

> "30. In order for Petitioner to offer and furnish the proposed paging and mobile radio telephone services, Petitioner must have authorization from the FCC to construct and operate a one-way station for the paging operations and a two-way station for the mobile radio telephone operations. The FCC has issued Petitioner a construction permit and station license for a new one-way station to operate on the frequency of 35.58 MHz. The

specificity" required of findings to facilitate intelligent review by this court, "will necessarily vary from case to case depending upon the quantity and complexity of the evidence introduced." *Indiana Bell,* 433 N.E.2d at 1200. *See also Charles W. Cole & Son, Inc. v. Indiana & Michigan Electric Co.,* (1981) Ind.App., 426 N.E.2d 1349, 1353.

In the instant case, the quantity and complexity of the evidence introduced regarding the issue of public convenience and necessity was, to say the least, significant. Nevertheless, we do not believe detailed findings as to each and every fact bearing upon the issue must be made in order to support an ultimate conclusion that public convenience and necessity warranted the granting of a certificate. Thus, while the Commission's findings are not exhaustive of all the evidence before it, they are not so inadequate or deficient as to prohibit intelligent review by this court.

FCC has issued Petitioner a construction permit and station license for a new two-way station to operate on the frequency of 454.250 MHz.

31. Petitioner's transmission facilities and equipment necessary to provide the proposed mobile radio telephone and paging services will be located at the Hook's Drug Tower in Indianapolis, Indiana. That equipment will be connected to a control terminal to be located at 2321 Production Drive, Indianapolis, Indiana. The pagers will be with the customers at their location, and the mobile units will be in the customers' automobiles unless the units are of the hand-held type. The total cost for Petitioner to purchase and install the necessary equipment to furnish the paging service would be no more than $46,000. The total cost to purchase and install the necessary additional equipment to furnish mobile radio telephone service would be no more than $18,000. The system as designed and the equipment to be acquired will be adequate to provide the proposed service. There is no probative evidence to dispute this fact or the accuracy of the cost estimates for the equipment.

31. Digital Paging Systems, Inc. has agreed to provide all necessary funding to cover the construction and operating costs of Petitioner's system to serve the Indianapolis, Marion County, market. It has a net worth in excess of $4,000,000. In addition to its financial commitment, Digital Paging Systems, Inc. has committed to make all of its resources, expertise, facilities and personnel available to assist Petitioner's operations.

33. The Commission finds that Digital Paging Systems, Inc. has sufficient financial strength to provide the financing it has agreed to provide to Petitioner, and Petitioner's request for authority to finance in this manner should be granted.

34. In its order in Cause No. 36286 and Cause No. 36279, the Commission found that Petitioner possesses the financial, technical and managerial ability necessary to render mobile radio telephone and/or paging service to the public within the geographic areas of the counties for which a certificate of territorial authority has been issued to Petitioner. No evidence was introduced that Petitioner's financial, technical or managerial ability has changed. The Commission again finds that with the support of Digital Paging Systems, Inc., Petitioner possesses the financial, technical and managerial ability necessary to render mobile radio telephone and paging service to the public within the geographic area of Marion County, Indiana."

Record at 431–34.

■ We fail to agree with the appellants' assertion that the Commission's order is "completely devoid" of supporting evidence. Rather, we believe the evidence is, if anything, overwhelming. Thus, we find no error in the Commission's conclusion that Digital possessed the requisite technical and managerial abilities.

*Issue Seven*

The appellants next assert the Commission erred in failing to articulate the meaning it ascribed to the term "public convenience and necessity". According to the appellants, this resulted in the Commission making a decision which was not properly based upon ascertainable standards.

■ While the appellants are correct in arguing that administrative decisions must be premised upon ascertainable standards, *Natural Resources Commission v. Sullivan*, (1981) Ind.App., 428 N.E.2d 92, 101; *Clarkson v. Department of Insurance*, (1981) Ind.App., 425 N.E.2d 203, 207, *trans. denied*, we have refused "to establish for all cases, a qualitative and quantitative evidentiary standard for proof of public convenience and necessity." *V.I.P.*, 171 Ind.App. at 115, 355 N.E.2d at 445. Instead, we held "that the formulation of 'minimum standards of proof' or evidentiary criteria which will aid the Commission in determining the presence or absence of the ultimate facts in a given common carrier case must

be left in large measure to the informed discretion of the Commission." *Id.*

Accordingly, in the instant proceedings, the Commission made the following observations:

"13. In determining what public convenience and necessity require, the Commission must consider all evidence and factors pertaining to the public's need for the service. In recognizing that there are many variables in the way RCC customers use their service, the Commission reiterates its finding made in the Order on the Consolidated Causes that the determination of the number of RCCs required to meet the demand in a given county may not be established solely by the number of units to receive service, but would also require consideration of the frequency of use by each customer, the duration of each use, and the time when such use takes place .... Therefore, the Commission in determining the issuance of a certificate of territorial authority to an additional RCC for a given area should apply a test of market potential. We thus turn to the evidence presented herein."

Record at 420–21.

■■■ The Commission then went on to cite the results of surveys regarding population, commuting habits, and number of businesses in and around Marion County as well as the projected growth in the market for radio paging services. In view of these findings and underlying evidence, we do not believe the Commission abused its discretion in its articulation of the meaning of public convenience and necessity.

*Issue Eight*

Next, the appellants argue the Commission abrogated to the FCC its own statutory duty to establish objective standards for determining the number of RCCs needed in Marion County. In particular, they challenge the Commission's finding that:

"The establishment of objective standards taking into consideration such variables would be in duplication or even possible conflict with the FCC in its de-

termination of the allocation of frequencies. Such allocation is within the *exclusive* jurisdiction of the FCC. Therefore, the Commission in determining the issuance of a certificate of territorial authority to an additional RCC for a given area should apply a test of market potential."

Record at 420–21 (emphasis in original). The appellants argue that by failing to establish objective standards, the Commission has left them without notice of what must be shown in order to obtain a certificate and increases the risk that such determinations will be inconsistent.

■■■ The appellants have again misconstrued the Commission's findings in an attempt to establish that a proper determination of public convenience and necessity was not made. In fact, the Commission *did* make the requisite finding of public need, and in the finding now challenged by the appellants was merely noting that the ultimate allocation of frequencies was within the exclusive jurisdiction of the FCC. The Commission in no way delegated its authority to the FCC by acknowledging their respective roles in the regulation of RCCs. Rather, it merely defined their respective roles and confined its actions to the determination of whether public convenience and necessity required the granting of a certificate, leaving the ultimate allocation of frequencies to the FCC. Accordingly, we find no error here.

*Issue Nine*

Challenging next the Commission's adoption of the theory of regulated competition over regulated monopolization, the appellants argue the Commission placed undue emphasis on competition and thereby failed to consider first the issue of public convenience and necessity. In support of their argument, the appellants direct our attention to *Hawaiian Telephone Co. v. FCC,* (D.C.Cir.1974) 498 F.2d 771. In that case the court held:

"When the FCC considers an application for certification of a new line, it must start from the situation as it then

exists, and must apply the statutory standard to determine whether indeed the public convenience and necessity requires more or better service. If it determines that more or additional competitive service would be in the public interest, then it can consider how much added service is necessary, and finally to whom the opportunity for providing service should be awarded. In this latter determination the Commission can balance equities and opportunities among the various carriers. The initial question for the Commission, however, must be whether the public interest requires more or different service."

*Id.* at 776. Thus, the court concluded:

"Looming large in the Commission's rationale, indeed, undeniably the key factor in its decision, is competition. Competition as a factor might have some relevance to the FCC decision, if competition had been shown to be of benefit to the public on the communication routes in question. Yet it is all too embarrassingly apparent that the Commission has been thinking about competition, not in terms primarily as to its benefit to the public, but specifically with the objective of equalizing competition among *competitors.*

This is *not* the objective or role assigned by law to the Federal Communications Commission. As a result of focusing first on competitors, next on competition, and then on the public interest, the FCC has given scant attention to the question of public convenience and necessity, and therefore has not met its statutorily imposed duty."

*Id.* at 775–76 (emphasis in original).

In the instant case, the appellants argue the Commission, like the FCC in *Hawaiian Telephone,* placed too much emphasis on competition and too little on the public's

need for the proposed services. We disagree.

■■■ As Digital has argued, the Commission gave consideration to the issue of competition but only after concluding public convenience and necessity required the granting of the certificate. What *Hawaiian Telephone* held, essentially, was that competition was a relevant consideration provided it did not precede the consideration of the public interest. Here, the Commission's consideration of the competition issue was made only after that of the public interest. We therefore do not believe the Commission erred in this respect.

*Issue Ten*

Finally, the appellants argue the Commission erred in its findings by distinguishing between RCCs and landline telephone companies. More specifically, they challenge the distinction made with regard to the finite capabilities of an RCC and the infinite capabilities of a landline company in terms of the number of customers each can serve.[5] In the appellants' view, this distinction has no basis in Indiana law since it is not made in Indiana Code section 8–1–2–88.

■■■ The appellants are correct insofar as Indiana Code section 8–1–2–88 does not distinguish between RCCs and landline companies. In fact, it provides for an identical standard for each in the granting of certificates to service providers that wish to offer their services in an area already served by another provider. However, the distinction made by the Commission was merely an observation that RCCs and landline companies are fundamentally different with respect to the number of customers each can ultimately serve. By "finding", as the appellants charge, that the number of frequencies granted an RCC effectively places a limit on the number of customers

5. In this regard, the Commission found:
"The number of customers an RCC can accommodate is ultimately limited by the number of channels allocated to it by the FCC and thereby the RCC may efficiently serve only a finite public.

In contrast, a landline company may provide service to an infinite public, in that it may accommodate additional customers simply by the installation of more instruments, lines and central office equipment."
Record at 416–17.

it can serve, the Commission was simply stating the obvious. Likewise, when the Commission observed that a landline company does not have the same limitation, the Commission was again stating what was obvious within its area of expertise. Therefore, we find no error in the distinction drawn by the Commission nor do we believe it was in any manner contrary to law.

Finding no error in the Commission's order, we affirm.

Affirmed.

NEAL, P.J., and ROBERTSON, J., concur.