**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 12 2012, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIC A. FREY**
Frey Law Firm
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT DECKER,                             )
                                           )
    Appellant-Petitioner,                  )
                                           )
      vs.                                )   No. 84A01-1112-PL-578
                                           )
PAUL WHITESELL, as Superintendent of the   )
Indiana State Police, THE INDIANA STATE    )
POLICE BOARD, and THE INDIANA STATE        )
POLICE,                                    )
                                           )
    Appellees-Respondents.                 )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1011-PL-9739

**October 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

Robert Decker appeals the trial court's findings of fact and conclusions of law affirming the termination of his employment by Paul Whitesell, as Superintendent of the Indiana State Police, the Indiana State Police Board, and the Indiana State Police (collectively, "the Board"). We affirm.

## ISSUES

Decker presents four issues, which we consolidate and restate as:

I.  Whether the Board abused its discretion by admitting a polygraph examination into evidence.

II. Whether the Board's decision to terminate Decker's employment is supported by the record.

III. Whether the trial court abused its discretion by denying Decker's motion to correct error.

## FACTS AND PROCEDURAL HISTORY

The Indiana State Police hired Decker on January 26, 2007, to work as a trooper. Subsequently, Decker was the subject of an investigation by the State Police regarding an allegation that he had consumed alcohol while on duty. At the end of the investigation, Whitesell sent Decker a letter on June 9, 2009, instructing him to attend at least ten alcohol abuse counseling sessions. Whitesell further ordered Decker to schedule the sessions by June 17, 2009. Decker scheduled only four of the ten required sessions by the June 17 deadline.

On September 8, 2009, the State Police opened another internal investigation against Decker. The primary investigator, Sergeant Jerry Williams, learned that Corporal

2

Michael Capicik had recently seen Decker drinking at a bar known as the Dawg House Bar & Grill. Williams sent Capicik to the Dawg House to examine its security system recordings. Capicik talked to the Dawg House's owner, Harold Ross, and obtained his permission to review the recordings. The recordings showed Decker drinking what appeared to be beer. Later, Ross told Williams that Decker had asked him to get rid of the recordings. Williams asked Decker about the allegation, and Decker denied it. Next, Whitesell ordered Decker to submit to a polygraph examination as part of the investigation. The exam was conducted by Sergeant Sidney Newton, who asked Decker whether he had requested that Ross "get rid of any video recordings." Tr. Ex. 29. Decker answered no, and Newton determined that Decker's answer was not truthful.

On January 5, 2012, Whitesell issued written charges to Decker as a first step toward terminating his employment. Whitesell contended that Decker: (1) failed to comply with Whitesell's order to schedule ten counseling sessions before June 17, 2009; (2) knowingly interfered with the State Police's internal investigation of Decker by asking Ross to destroy any surveillance recordings that showed Decker consuming alcohol at the Dawg House; (3) conveyed false information to a fellow employee by telling Williams that he had not asked Ross to destroy surveillance recordings; and (4) conveyed false information to a fellow employee by telling Newton during the polygraph examination that he had not asked Ross to destroy surveillance recordings.

Decker requested an evidentiary hearing before the Indiana State Police Board. The Board admitted the results of the polygraph examination into evidence over Decker's objection. After the hearing, the Board determined that all four charges were supported

by the evidence and affirmed Whitesell's decision to fire Decker. Next, Decker filed a petition for judicial review with the trial court. The court held oral argument and issued findings of fact and conclusions of law denying Decker's petition. Decker filed a motion to correct error, in which he asked the court to remand the case to the Board for further evidentiary proceedings due to newly discovered evidence. The court denied Decker's motion to correct error, and this appeal followed.

## DISCUSSION AND DECISION

### I. ADMISSION OF POLYGRAPH EVIDENCE

Decker asserts that the Board should not have admitted the polygraph report at the evidentiary hearing. An appellate court stands in the same position as that of the trial court when reviewing a decision of an administrative agency. *Filter Specialists, Inc. v. Brooks*, 906 N.E.2d 835, 844 (Ind. 2009). We review an administrative agency's decision to admit or reject evidence for an abuse of discretion. *See RAM Broad. of Ind., Inc. v. Digital Paging Sys. of Ind., Inc.*, 463 N.E.2d 1104, 1109 (Ind. Ct. App. 1984) (finding no abuse of discretion in an administrative agency's exclusion of tendered evidence).

The superintendent of the Indiana State Police may discharge an employee for cause after setting forth charges in writing. Ind. Code § 10-11-2-15(a) (2003). An employee may request an evidentiary hearing before the Indiana State Police Board to contest the charges. Ind. Code § 10-11-2-15(d). The hearing is conducted in an informal manner and "without recourse to the technical common law rules of evidence required in proceedings in courts." Ind. Code § 10-11-2-15(f). Nevertheless, both parties

4

acknowledge that in Indiana, polygraph examinations are generally inadmissible without a valid stipulation between the parties. *See Rynerson v. City of Franklin*, 669 N.E.2d 964, 970 (Ind. 1996) (requiring the parties to jointly stipulate to the admission of a polygraph examination in an administrative proceeding regarding the termination of a police officer's employment).

In October 2009, Whitesell ordered Decker to submit to a polygraph examination. At the beginning of the examination, Decker signed a document acknowledging "any statement, information or evidence which is gained by reason of this interview can and will be used against [Decker] in any departmental disciplinary proceeding." Tr. Ex. 16. Decker acknowledges executing this statement of consent, but he asserts that his consent was invalid because it was coerced by the threat of further disciplinary charges if he failed to cooperate.

We find guidance on this point in *Temperly v. State*, 933 N.E.2d 558 (Ind. Ct. App. 2010), *trans. denied*, *cert. denied*, 132 S. Ct. 496, 181 L. Ed. 2d 345 (2011). In that case, Temperly was taken to a hospital for treatment following an automobile accident, and he said that he had drunk beer before the accident. At the hospital, an officer asked Temperly to consent to a chemical blood test. The officer advised Temperly that if he refused to consent, his driving privileges would be suspended for a year, and if he had a prior conviction for operating while intoxicated, his suspension would be extended by an additional year and he could be charged with an infraction. Temperly signed a consent form, and he was later charged with operating while intoxicated. He was convicted and sought appellate review.

On appeal, Temperly argued that his consent to the chemical blood test was invalid because it was coerced by the threat of his license being suspended and the threat of being charged with an infraction. A panel of this Court noted that the officer had not made any threats but instead had simply explained the penalties if Temperly refused to consent. The Court reasoned that mere advisement of penalties was not sufficiently coercive to render Temperly's consent invalid and upheld his conviction. *See id.* at 564.

Here, Whitesell's letter ordered Decker to submit to a polygraph examination and advised that refusal to submit to the examination or failure to cooperate during the examination could result in "[d]epartmental charges that could result in your dismissal from the Department." Tr. Ex. 15. The form that Decker signed at the polygraph examination also advised him that failure to answer questions could subject him to disciplinary charges that could result in termination. However, the form further informed Decker that he was "entitled to all of the rights and privileges guaranteed by laws and the Constitution of the State of Indiana and the Constitution of the United States, including the right not to be compelled to incriminate [himself]." Tr. Ex. 16. Under these circumstances, as in *Temperly*, we conclude that Decker was advised of his options and the consequences of his choices. The advisements that refusal to cooperate could result in additional disciplinary charges did not invalidate his signed consent.[1] Therefore, the

---

[1] Decker also argues that in signing the form, he did not stipulate that the polygraph report would be admissible as evidence. We disagree. The essence of a stipulation of admissibility is that a party agrees that polygraph evidence "may be used in evidence by either party." *Rynerson*, 669 N.E.2d at 970 (quoting *Brown v. State*, 587 N.E.2d 111, 113 (Ind. 1992)). Here, Decker acknowledged that any evidence from the polygraph examination would be used against him in disciplinary proceedings. This acknowledgement is an adequate stipulation.

6

Board did not abuse its discretion by admitting the polygraph test results into evidence at the hearing.

## II. SUFFICIENCY OF THE EVIDENCE

Decker contends that the evidence does not support any of the four charges that the Board cited as grounds for the termination of his employment.

As noted above, the superintendent of the Indiana State Police must issue written charges if seeking to discharge an employee for cause. Ind. Code § 10-11-2-15(a). The charges may be based on violations of the laws of Indiana or the State Police's departmental rules. Ind. Code § 10-11-2-15(b). An employee may seek a hearing before the Indiana State Police Board. Ind. Code § 10-11-2-15(d). If the Board's decision is adverse to the employee, he or she may seek judicial review pursuant to Indiana Code sections 4-21.5-5-1 through 16, also known as the Administrative Orders and Procedures Act ("AOPA"). Ind. Code § 10-11-2-15(h).

Courts have a limited power of judicial review over state agency action under AOPA. *Ghosh v. Ind. State Ethics Comm'n*, 930 N.E.2d 23, 25 (Ind. 2010). A reviewing court may set aside an agency action only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(2) contrary to constitutional right, power, privilege, or immunity;
(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(4) without observance of procedure required by law; or
(5) unsupported by substantial evidence.

*Id.* (quoting Ind. Code § 4-21.5-5-14(d) (1987)). Where, as here, a party argues that an administrative decision is unsupported by substantial evidence, we do not substitute our

7

judgment on factual matters for that of the agency or reweigh the evidence. *Regester v. Ind. State Bd. of Nursing*, 703 N.E.2d 147, 151 (Ind. 1998). Instead, we read the record in the light most favorable to the administrative proceedings. *Id.* We may vacate the agency's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the agency are clearly erroneous. *Id.*

We start with the Board's determination that Decker failed to schedule a minimum of ten counseling sessions on or before June 17, 2009, in violation of Whitesell's order. On June 9, 2009, Whitesell sent Decker a letter ordering him "to attend psychotherapy intervention related to alcohol abuse." Tr. Ex. 1. The letter further provides, "[Y]ou are required to schedule a minimum of ten sessions," and "[s]cheduling of treatment shall be accomplished by June 17, 2009." *Id.* The evidence presented at the hearing established that Decker scheduled only four sessions by June 17, 2009. Furthermore, when Decker was interviewed by an investigator on September 16, 2009, he conceded that he had not scheduled all ten sessions by the June 17 deadline. Instead, Decker scheduled the remaining six sessions on September 1, 2009.

Decker asserts that he misunderstood Whitesell's order and believed that he only had to schedule the first session by June 17. Therefore, he concludes, he did not knowingly or intentionally violate Whitesell's order. We disagree. Whitesell's June 9, 2009 letter clearly indicates that Decker was to obtain psychotherapy treatment as soon as possible, for a minimum of ten sessions, to address Decker's possible abuse of alcohol. Given this urgency, it would be unreasonable to interpret Whitesell's order to require that the first session needed to be scheduled by the June 17 deadline, and the remainder could

8

be scheduled months later. Thus, the evidence supports the Board's determination that Decker violated Whitesell's order.

The remaining three charges issued by Whitesell and sustained by the Board were that Decker asked Ross to destroy surveillance recordings to hinder an internal investigation, lied to Williams about asking Ross to do so, and lied to Newton about asking Ross to do so. The evidence is as follows. In August 2009, Capicik saw Decker drinking at the Dawg House. On September 8, 2009, Whitesell suspended Decker's law enforcement authority pending further investigation for failing to schedule the previously-ordered counseling. Capicik subsequently became aware of the pending investigation against Decker and, at Williams' request, went to the Dawg House and asked Ross to show him the bar's surveillance recordings. Capicik looked at the recordings and saw Decker drinking what appeared to be beer.

Three weeks later, Decker went to the bar and spoke with Ross. Decker told Ross, "if something came up, make sure that the tapes aren't there." Tr. p. 285. Ross took Decker's statement as an indirect request to "destroy the tapes." *Id.* In exchange, Decker offered to "help [Ross] with the bar" from a financial perspective. *Id.* This evidence is sufficient to establish that Decker interfered with the investigation by asking Ross to eliminate the recordings. Decker argues that Ross' testimony on this point is contradicted by a recording of a conversation between Ross, Decker, and his girlfriend in which Ross

denied that Decker had asked him to destroy the recordings. However, Ross' credibility was a matter for the Board to consider.[2]

Next, on October 21, 2009, Williams interviewed Decker. Decker told Williams that he considered Ross to be a friend and that he had no reason to believe that Ross would lie. Decker admitted that he had heard that officers had reviewed security camera recordings at the Dawg House, and he had asked Ross about the officers. However, when Williams asked Decker if he had told Ross to destroy the recordings, Decker stated, "I never asked him to destroy anything in that bar." Tr. Ex. 12, p. 9. This evidence, in combination with Ross' testimony that Decker asked him to destroy surveillance recordings,[3] is sufficient to establish that Decker conveyed false information to Williams in the course of the investigation.

Finally, as noted above, on October 29, 2009, Decker submitted to a polygraph examination administered by Newton. Newton first asked Decker a series of questions about the investigation without using the polygraph equipment. Next, Newton attached the polygraph sensors to Decker and asked him, "Did you ask Harold Ross to get rid of any video recordings?" and "Did you ask anyone to hide information about this investigation?" Tr. Ex. 29. Decker answered no to both questions. Newton reviewed the data provided by the sensors and concluded that Decker's answers were deceptive. This

---

[2] Decker contends in his reply brief that Ross' testimony must be disregarded because it is incredibly dubious. A party that raises an argument for the first time in its reply brief waives the argument on appeal. *See Bd. of Works of Lake Station v. I.A.E., Inc.*, 956 N.E.2d 86, 95 (Ind. Ct. App. 2011), *trans. denied*.

[3] The Board specifically stated that it considered Ross to be more credible than Decker.

evidence, along with Ross' testimony that Decker asked him to destroy surveillance recordings, is sufficient to establish that Decker conveyed false information to Newton.

We conclude that all four of the charges are supported by substantial evidence. Therefore, the trial court did not err by declining to reverse the Board's decision.

### III. MOTION TO CORRECT ERROR

Decker contends that the trial court should have granted his motion to correct error and remanded the case to the Board for further evidentiary proceedings due to newly discovered evidence. The trial court's decision on a motion to correct error comes to us cloaked with a presumption of correctness, and the appellant has the burden of showing an abuse of discretion. *Cox v. Matthews*, 901 N.E.2d 14, 21 (Ind. Ct. App. 2009), *trans. dismissed*. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id.*

Judicial review of disputed issues of fact presented in a proceeding under AOPA must be confined to the agency record. Ind. Code § 4-21.5-5-11 (1986). A reviewing court may consider evidence outside of the agency record if:

> [the evidence] relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding one (1) or both of the following:
>
> > (1) Improper constitution as a decision-making body or grounds for disqualification of those taking the agency action.
> >
> > (2) Unlawfulness of procedure or of decision-making process.

11

> This subsection applies only if the additional evidence could not, by due diligence, have been discovered and raised in the administrative proceeding giving rise to a proceeding for judicial review.

Ind. Code § 4-21.5-5-12(a) (1986).

In the current case, after the trial court issued its judgment affirming the Board's decision to terminate Decker, Decker filed a motion to correct error attaching an affidavit by Ross. In the affidavit, Ross asserted that he was intimidated by State Police investigators into falsely testifying that Decker had told him to destroy surveillance recordings. Decker stated in his motion to correct error that Ross' new statement "was not available at the time of the trial or hearing of this matter." Appellant's App. pp. 11-12. However, the motion fails to explain why Ross' statement could not have been discovered by due diligence during the administrative proceeding. In fact, while the administrative case was proceeding, Decker and his girlfriend talked with Ross while surreptitiously recording the conversation. A transcript of the conversation was admitted into evidence at the administrative hearing, and the transcript reflects that Ross denied to Decker and his girlfriend that Decker had asked him to destroy security camera recordings. Furthermore, when Decker cross-examined Ross at the administrative hearing, Ross made statements that were later repeated in his affidavit, including that Williams had told Ross that if he had to go get a subpoena to look at the surveillance recordings, he would search the entire bar, and that Ross alleged that Capicik had come to the bar and danced with female patrons in a manner that Ross found offensive. Thus, some of the information contained in Ross' affidavit was known to Decker at the time of the hearing.

We conclude from this evidence that Decker had contacted Ross during the administrative proceedings and could have investigated the inconsistencies in Ross' statements that Ross later discussed in his affidavit. Given Decker's failure to prove that his new evidence could not have been previously discovered by the exercise of due diligence, the trial court did not abuse its discretion by denying Decker's motion to correct error and remand the case to the Board. *See City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1092-93 (Ind. Ct. App. 1998) (determining that the trial court abused its discretion by considering new evidence upon review of an administrative agency decision because Woods failed to show that he exercised due diligence in seeking the evidence), *trans. denied*.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.